**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0963n.06**
**Filed: December 14, 2005**

**No. 04-4005**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SABRI AZIZ HANA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | PETITION FOR REVIEW FROM THE |
| | ) | BOARD OF IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**Before: SILER, CLAY, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** Petitioner Sabri Aziz Hana[1] petitions this court to review the decision of the Board of Immigration Appeals, which, without opinion, affirmed the Immigration Judge's denial of Hana's application for asylum, withholding of removal under the Immigration and Nationality Act, and protection under the Convention Against Torture. After a hearing to consider the government's removal proceedings against Hana for remaining in the United States longer than authorized, the Immigration Judge determined that Hana's story of political persecution in Iraq was not credible because of several material inconsistencies. The Immigration Judge also determined that, even if Hana's testimony were credible to establish past persecution, the government submitted sufficient evidence of changed circumstances in Iraq to overcome the presumption that Hana's fear of future persecution was well-founded. The Immigration Judge ended her opinion by deciding that

---

[1]Petitioner's name is sometimes spelled "Hanna" in the record.

Hana's alleged torture did not warrant asylum despite changed circumstances.

Because substantial, unrebutted evidence supports the Immigration Judge's finding that changed circumstances in Iraq overcome the presumption that Hana has a well-founded fear of future persecution, we deny Hana's petition for review without considering the Immigration Judge's credibility findings. We also conclude that substantial evidence supports the Immigration Judge's decision not to grant asylum based on severe past persecution. Because Hana failed to raise his religious persecution argument before the Immigration Judge and failed to proffer any evidence of such persecution to the Board or this court on review, we do not consider Hana's religious persecution claim.

**I.**

The Immigration and Naturalization Service[2] initiated removal proceedings, under Section 237(a)(1)(B) of the Immigration and Nationality Act ("Act"), in the United States Immigration Court in Detroit against Hana for remaining in the United States longer than permitted. JA 51. At a hearing before the Immigration Judge, Hana admitted that he was a citizen and native of Iraq; that

---

[2]Although the former Immigration and Naturalization Service ("INS") was an agency of the Department of Justice, the INS' functions were divided into three agencies within the Department of Homeland Security on March 1, 2003. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). The Attorney General continues, however, to direct the Executive Office for Immigration Review, which includes the immigration courts and the Board of Immigration Appeals. *See* Department of Justice Rules and Regulations Regarding Aliens and Nationality, 68 Fed. Reg. 10349 (Mar. 5, 2003) (codified as amended in scattered sections of 8 C.F.R.).

he received permission on December 21, 2000, to remain in the United States until June 20, 2001; and that he remained in the United States beyond June 20, 2001. JA 52. Hana submitted a timely application for asylum under section 208(a) of the Act, for Withholding of Removal under section 241(b)(3) of the Act, and for consideration under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85 ("Convention"). JA 52-53.

In his initial application, Hana alleged that he "suf[f]ered by the hands of [the] Iraqi [government] on the basis of [his] family affiliation with the Kurdish who live in the north of Iraq." JA 179. He claimed that he was arrested in 1979 because the Iraqi government accused him of assisting the Kurdish movement. JA 179. Hana alleged that his main problem occurred in 1997 when the Iraqi government discovered that Hana's son-in-law, Kamal Hana, was employed with the American Forces in Kurdistan from 1990 until the American forces left in 1996. JA 179. Hana claimed that he was arrested for two-month periods once in 1997 and once in 1999 because the Iraqis accused him of assisting and spying for the American forces. JA 180.

When an asylum officer later interviewed Hana, Hana alleged for the first time that he was sentenced to one year's imprisonment for treason in 1979 and that, during his imprisonments in February 1997 and April 1999, security agents beat him with sticks and cables every other day, resulting in the loss of his front teeth. JA 186. He claimed that he was released only after pledging to join the Ba'ath Party but that he was "constantly followed by Amen agents and Ba'ath Party members." JA 186. Hana stated that he feared being tortured upon his return to Iraq because of his

assistance to the American troops and because of his habitation in the United States.  JA 181.

At a hearing in February 2003, Hana amended his application to add several assertions.  JA 84-86.  Relevant to our review, he claimed that he was an Assyrian Christian, but he did not assert that he was persecuted for his religious affiliation.  JA 169.  Hana submitted several articles and reports describing human rights abuses committed by Saddam Hussein's regime in Iraq.  *See* JA 189-90.  The government submitted documents describing the United States' recent liberation of Iraq from the Hussein dictatorship.  JA 146-61.

Besides recalling several events that were mentioned in his application, Hana said that the Moslems confiscated his lands in Iraq after "the last bombarding," JA 101, which he later said referred to the 2003 invasion of coalition forces, JA 114.  When his counsel asked Hana if he was afraid of returning to Iraq, Hana stated that he had no house, money, or farm to which to return.  JA 104.  On cross-examination, the government asked Hana whether he was afraid of the security forces upon his return to Iraq, and Hana responded, "[T]hey don't exist, I'm not afraid of them, but if I go back there is no food, . . . no jobs."  JA 116.

The Immigration Judge denied Hana's application in all respects on May 8, 2003, because she found material aspects of Hana's testimony incredible and because the government offered uncontested evidence that coalition forces overthrew Saddam Hussein's regime in 2003.  JA 64, 144. The overthrow of Hussein, she determined, demonstrated that Hana had no objective, well-founded fear of future persecution in Iraq.  JA 68.  She also stated that, while Iraq may be experiencing civil

unrest, such generalized unrest is an insufficient ground on which to base asylum. JA 69. She ended her opinion by noting that Hana's alleged torture was insufficient for a grant of asylum despite changed circumstances. JA 72.

Hana appealed the Immigration Judge's decision to the Board of Immigration Appeals, and, for the first time, he asserted that he feared persecution based on his religious status as an Assyrian Christian. *See, e.g.*, JA 11-12. Hana requested that the Board remand his claim to the Immigration Judge for her to consider his religious persecution claim, JA 39-42, but he proffered no evidence to support his new claim. Hana also challenged the Immigration Judge's credibility findings and denial of his application. *See* JA 7. The Board affirmed without opinion. JA 3. Hana now petitions this court to review the Board's decision.

We deny Hana's petition for review of the Immigration Judge's decision, which was the final agency determination in this case,[3] because there was substantial evidence to support the Immigration Judge's decision regarding changed circumstances in Iraq. We also conclude that Hana's alleged brutal treatment, even if true, was not so severe as to warrant asylum despite changed circumstances in Iraq. Finally, we do not consider whether Hana faces religious persecution on his return to Iraq because he neither raised the issue with the Immigration Judge nor proffered any evidence to the Board or this court to support his claim.

---

[3]When the Board affirms without opinion, this court reviews the Immigration Judge's decision as the final agency determination. *See Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004).

**II.**

When reviewing denials of asylum, this court determines "whether the alien qualifies as a refugee under a substantial evidence test." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004); *see also Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005) (applying the substantial evidence test to findings of both past and future persecution). The Immigration Judge's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 703. We cannot reverse the Immigration Judge merely because "we would have decided the matter differently." *See Mikhailevitch v. I.N.S.*, 146 F.3d 384, 388 (6th Cir. 1998).

Because substantial evidence supports the Immigration Judge's findings that conditions have changed in Iraq to such an extent that Hana's fear of future persecution is unfounded, this court need not consider whether substantial evidence supports the Immigration Judge's credibility findings. "A well-found fear of persecution . . . has both a subjective and an objective component . . . ." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). Substantial evidence supports the Immigration Judge's finding that Hana had no objective fear of future persecution. The documents submitted by the government, *see* JA 146-62, established that "the regime which [Hana] asserts that he was persecuted by no longer exists in Iraq." JA 68. For example, the government submitted a speech by the President, given in Dearborn, Michigan, stating that Saddam Hussein was no longer in power and that the coalition forces were creating a democratic state in Iraq. *See* JA 146-50. Other submitted documents described the interim government in Iraq and the goal of creating a free state

for all people in Iraq. *See, e.g.*, JA 152-55. Because the only evidence that Hana submitted of the abusive conditions in Iraq concerned abuses before the coalition forces entered Iraq in 2002, JA 189-90 and Hearing Exhibit 8, the government's evidence of changed circumstances after March 2003 was unchallenged. Substantial evidence, therefore, supported the Immigration Judge's conclusion that Hana could not demonstrate an objective fear of future persecution.

Substantial evidence not only supports the Immigration Judge's finding that Hana lacks an objective fear but also supports finding that Hana had no subjective fear of future persecution in Iraq. When asked whether he feared the security forces that allegedly tortured him, Hana plainly admitted, "I'm not afraid of them" because "they don't exist . . . ." JA 116. Instead, Hana revealed that he feared returning because of economic hardship. *See* JA 104, 116. Considering the evidence submitted by the government and Hana's testimony, substantial evidence supports the Immigration Judge's findings that changed circumstances prevented Hana from demonstrating a well-founded fear of future persecution.[4]

---

[4]Hana's claims for withholding of removal and for protection under the Convention also fail because, as he failed to meet the less demanding "well-founded fear" standard required for asylum, he cannot satisfy the more demanding standards regarding prospective persecution required for withholding of removal and protection under the Convention. *See Yu*, 634 F.3d at 703 n.3. Moreover, Hana's argument that the alien's credibility is irrelevant to claims brought under the Convention is misplaced because the Immigration Judge did not rely on Hana's credibility when determining that he could not obtain relief under the Convention. The Immigration Judge denied Hana's Convention claim because of changed circumstances. *See* JA 73.

We also deny Hana's request for remand of his case to the Board for consideration of whether circumstances have changed in Iraq since the time of the Immigration Judge's decision; Hana has failed to proffer any evidence of such changed circumstances.

**III.**

Hana's persecution, if believed, was not so severe as to warrant asylum despite Iraq's changed circumstances. An alien can receive asylum, despite changed circumstances, if he can provide "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution." 8 C.F.R. § 208.13(b)(1)(iii)(A). Hana's alleged persecution was not as severe as that in *Matter of Chen*, in which the alien was constantly subjected to various forms of serious physical and psychological torture for several years. *See* 20 I & N Dec. 16, at *21 (BIA 1989). Hana was, at most, subjected to three detentions, none of which lasted longer than two months. He alleged no psychological torture, and he had only missing teeth and bruises on his return from his imprisonment. JA 126-27. While such abuse, if true, is reprehensible, "severe persecution" is reserved for extreme cases, such as "for the case of the German Jews, the victims of the Chinese 'Cultural Revolution', [and] survivors of the Cambodian genocide . . . . ." *See Bucur v. I.N.S.*, 109 F.3d 399, 405 (7th Cir. 1997) (citations omitted). Hana has not alleged persecution that severe.

**IV.**

We do not consider Hana's religious persecution claim because Hana did not present this claim to the Immigration Judge at the hearing and because he has proffered no evidence of such persecution during his requests for review. 8 U.S.C. § 1252(d)(1) deprives federal courts of jurisdiction to review immigration decision when aliens do not exhaust administrative remedies. Although Hana stated in his application that he was a Chaldean Catholic Christian, he did not allege

that he was persecuted because of his religious affiliation, either in his applications or at the hearing before the Immigration Judge. It is, consequently, misleading for him to claim that the Immigration Judge "erred in her decision by not addressing this separate and distinct form of relief . . . ." Petitioner's Br. 27. Hana missed, but was not denied, his opportunity to present his religious persecution claim, and he, therefore, failed to exhaust his administrative remedies.

Moreover, even if Hana had exhausted his administrative remedies by raising his religious persecution claim on appeal to the Board, Hana has not proffered any evidence to support his religious persecution claim. Although Hana cites one book, *Indigenous People* by Fred Afrim (Harper's 2003), that describes the general plight of Assyrian Christians in the Middle East, he offers no evidence that he was persecuted or has a reasonable fear of persecution by the current Iraqi government based on his religious affiliation. Hana's brief alleges myriad facts about the treatment of Assyrian Christians throughout history, but the unsupported assertions of Hana's counsel are not evidence. *See Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003). Because Hana failed to present his religious persecution claim to the Immigration Judge and failed to proffer any evidence to support his claim, we do not consider it.

## V.

For the foregoing reasons, we DENY Hana's petition for review.