NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0825n.06

09-3009

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 22, 2009**
LEONARD GREEN, Clerk

ABDOULAYE TRAORE,

    Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM A FINAL ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**PER CURIAM.** After initially fleeing to Burkina Faso from his home in Cote d'Ivoire,

petitioner Abdoulaye Traore entered the United States without authorization. He eventually

sought asylum, withholding of removal, and protection under the United Nations

Convention Against Torture, requests that were either dismissed or denied on the merits

by an immigration judge and by the Board of Immigration Appeals (BIA). Traore now

challenges those adverse determinations. We find no merit to the petitioner's contentions

and deny his petition for review, based in part on the merits and in part due to our lack of

jurisdiction to review certain determinations.

In his asylum application and in oral testimony before an immigration judge,

petitioner Traore explained that he was a citizen of Cote d'Ivoire, a member of the Dioula

tribe, and a supporter, but not a member, of the RDR (Republican Democratic Rally) party. According to Traore, on September 24, 2002, approximately 30 armed soldiers entered his home where he was sleeping with his brother, his sister, and his mother. The soldiers beat the brothers and sister with their rifles and warned the family to cease supporting the RDR party and its leader, Alassane Ouattara, himself a Dioula tribe member. Traore testified that he was then hit with a rifle until he fell to the floor unconscious. When he regained consciousness, he found himself tied to a tree with severe bruises and other injuries to his legs.

The following day, the family fled their homeland for Burkina Faso where Traore's mother, brother, and sister still resided at the time of the administrative hearing in this matter. After the petitioner had resided in Burkina Faso for 20 months, however, because he had experienced difficulty finding employment in that country, and because he had been forced to keep his Ivorian heritage secret for fear of retribution, he left Burkina Faso and flew to the United States, entering New York through use of a forged passport.

On November 15, 2004, Traore filed an application for asylum. Although the petitioner indicated on one page of that application that he had entered the United States on May 31, 2003, the remainder of the application mentioned May 31, 2004, as the date of entry into this country. To further complicate matters, at an earlier appearance before another immigration judge, Traore's counsel "admit[ted] . . . [that Traore] entered the United States on May 31st, 2003 in New York." According to representations made by the

government's own counsel in the matter, however, "the original [application] with the initials of the asylum officer who had the interview . . . [contained] a few changes that the asylum officer indicated the respondent made during the interview. One of them was with respect to the date in which he made it '04 instead of '03." Moreover, throughout the evidentiary hearing conducted by the immigration judge who decided this matter, Traore consistently maintained that he had entered the United States at the end of May 2004, less than six months before filing his asylum application.

Nevertheless, the immigration judge concluded that Traore had not "demonstrate[d] by clear and convincing evidence that the application ha[d] been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Consequently, the immigration judge held that the petitioner was precluded from asylum relief. Alternatively, the immigration judge concluded that Traore failed to establish either the past persecution or the well-founded fear of future persecution that would justify the discretionary relief sought. The administrative court also denied the petitioner withholding of removal and relief under the Convention Against Torture. The BIA agreed that Traore's asylum application was time-barred and that the petitioner otherwise failed to establish his eligibility for other relief. Traore then timely filed his petition for review with this court.

When reviewing the BIA's ruling, we must sustain the administrative determination if that ruling is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "Under this

deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). Rather, to overturn factual determinations "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

In addressing the petitioner's asylum claim, the immigration judge concluded that Traore failed to adduce clear and convincing evidence that he entered the United States during the one-year period prior to the filing of his asylum application. Consequently, the immigration judge and BIA held the asylum claim time-barred. *See* 8 U.S.C. § 1158(a)(2)(B) (alien ineligible for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States"). Although we find this administrative determination clearly erroneous and unsupported by the record when viewed as a whole, the provisions of 8 U.S.C. § 1158(a)(3) deny jurisdiction to any court to review such a timeliness ruling. ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).")

Moreover, the petitioner cannot rely on the relevant section of the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D), which provides that "[n]othing in any other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an

appropriate court of appeals . . . ." The petitioner's challenge to the timeliness determination raises neither a constitutional issue nor a question of law. See Almuhtaseb v. Gonzales, 453 F.3d 743, 748 (6th Cir. 2006).

Even if we were able to address the merits of the asylum issue, however, we could not find that Traore is entitled to the relief he seeks. For the petitioner to merit a grant of asylum, he must demonstrate either that he suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, and/or that he has a well-founded fear of future persecution based upon one of the protected grounds. Although the relevant statutory provisions do not define "persecution," we have consistently recognized that "while even a single beating offends one's sense of civilized governmental conduct, a single beating does not *compel* a finding of persecution." *Gilaj v. Gonzales*, 408 F.3d 275, 284 (6th Cir. 2005); *Mikhailevitch*, 146 F.3d at 390. Nevertheless, we do not categorically preclude the possibility that a single act of violence could be so brutal and intimidating that a petitioner could establish the persecution necessary to justify a grant of asylum. *See, e.g.*, *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) ("persecution can be found on the basis of only one incident, . . . but an isolated attack must be of sufficient severity to warrant such a finding"). In this case, however, Traore alleges only a single beating at the hands of the military that, although certainly unfortunate, does not rise to the level of those actions that we have previously considered to constitute persecution. *See, e.g.*, *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (no finding of persecution even though petitioner was twice arrested and detained for a week on each occasion and, on

a third occasion, "was beaten by policemen, resulting in head injuries and a week-long hospitalization"). Furthermore, he has offered no evidence to show that his mere support of, but not membership in, a political party would still, seven years after that single act of violence, engender the physical retribution that could constitute "persecution" if Traore returned to Cote d'Ivoire.

The petitioner also challenges the propriety of the denial of withholding of removal by the immigration judge and the BIA. Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's . . . nationality . . . or political opinion." Thus, to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica*, 388 F.3d at 951. To make such a showing, a petitioner "must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return." *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). Such a requirement is "a more stringent burden than what is required on a claim for asylum." *Id.* at 640 (quoting *Pilica*, 388 F.3d at 951).

Again, Traore has failed to adduce sufficient evidence to establish such a "clear probability" of persecution in Cote d'Ivoire. As unconscionable as the beating endured by the petitioner was, the fact remains that Traore's claim for withholding of removal is based

on that single incident that occurred more than seven years ago.  He has offered no testimony or proof that similar retribution for mere party support is still possible in his native country, much less "more likely than not."  Because the factual evidence before us does not *compel* a result contrary to that reached by the immigration judge and the BIA, we find no merit to the petitioner's claim in this regard.

Finally, Traore purports to contest the administrative denial of relief pursuant to the United Nations Convention Against Torture.  However, he failed to argue this issue in his appellate brief and, therefore, we deem the issue to have been waived.  *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  (Citations omitted)).

For the reasons discussed, we conclude that we are without jurisdiction to review the administrative decision regarding the timeliness of Traore's asylum application. Because the petitioner's remaining challenges are either without merit or have been waived, we DENY Traore's petition for review in this matter.