NOT RECOMMENDED FOR PUBLICATION
File Name: 12a1068n.06

No. 12-3152

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Oct 10, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| XUEFANG HE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON PETITION FOR REVIEW OF |
| | ) | THE DECISION OF THE BOARD |
| v. | ) | OF IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | OPINION |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

Before: SILER and COOK, Circuit Judges; STEEH, District Judge[*]

**GEORGE C. STEEH, District Judge.** This case arises from the denial of an asylum application for He Xuefang,[1] a twenty-four year old native of China who seeks asylum on religious grounds. On appeal, Ms. He challenges the Board of Immigration Appeals' affirmation of the denial of her application for asylum on grounds that the immigration judge (IJ) violated her due process rights; in addition, she asserts that the IJ's findings on persecution and religious practice are not supported by substantial evidence. We disagree, and **DENY** the petition for review.

---

[*] The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] Traditionally, for Chinese names, the family name precedes the given name. In this case, "He" is the family name and "Xuefang" is the given name.

## I. FACTS AND PROCEDURAL HISTORY

He Xuefang is a twenty-four year old native and citizen of the People's Republic of China. In October 2006, Ms. He began attending a house church in China; she was formally baptized into the Christian faith on January 28, 2007. The house church she attended was not sanctioned by the Chinese government, thus exposing the church and its members to governmental repression.

On May 9, 2007, local police officers arrested Ms. He and her mother, alleging that both were members of an unsanctioned church and were illegally proselytizing their faith. The officers seized two Bibles and various Christian posters from their home. Ms. He and her mother were detained at the local police station for eight days.

During her detention, Ms. He was interrogated twice. The first interrogation lasted for approximately one hour. At that time, Ms. He was asked to prepare a letter confessing to the charges leading to her arrest and naming other members of her house church. She refused; as a result, police officers verbally harassed her, pulled her hair and slapped her twice across the face. The second interrogation lasted for approximately an hour and a half. Police officers reiterated their demand for a confession letter. Upon her repeated refusal to do so, the officers forced Ms. He to kneel for approximately ten minutes and kicked her in the back and legs seven or eight times. She suffered bruises from this assault, but required no medical attention.

A police chief, serving as the intermediary of the director of the local Public Security Bureau (PSB), offered Ms. He a quid pro quo: she would be released if she married the director's son. Ms. He was not enamored with the director's son; she perceived that he had a hodgepodge of deficiencies ranging from a lack of work ethic to physical ailments that made him unsuitable for marriage.

Initially refusing to engage in this exchange, Ms. He later acquiesced for the sake of obtaining release. Shortly thereafter, she began making plans to leave China.

Upon Ms. He's release, the director's wife pressured Ms. He into marrying her son as soon as possible. Ms. He's parents resisted, claiming that she was too young to be legally wed. Her parents also rejected the idea of a customary marriage in lieu of a legal one to circumvent legal concerns regarding Ms. He's age. The director's wife then coupled her entreaties with threats to send Ms. He and her mother back to jail. After being repeatedly subjected to these demands, Ms. He submitted and was engaged on October 1, 2007.

Once Ms. He's engagement was formalized, the director's son began harassing Ms. He at her home every two or three days. On October 17, 2007, the son appeared at her home and attempted to touch and kiss her; in response, Ms. He yelled angrily, attracting the attention of her neighbors. When the neighbors arrived, the son fled the scene.

As part of her plans to leave the country, Ms. He prepared for and passed the TOEFL examination. In addition, she applied for an educational visa to the United States, which was granted in March 2008. On April 29, 2008, Ms. He departed China and was unhindered by Chinese officials in her departure. Her destination was Montana.

Ms. He enrolled at the University of Montana at Missoula. She studied at the university for about three months. During this three-month period, Ms. He attended three or four services at the Missoula Valley Church. She left Montana for Los Angeles in search of a large Chinese community. Ms. He remained in Los Angeles for six months. While living in the city, she attended services at the House of Christians church, which provided Chinese-language worship services. In January

2009, Ms. He left Los Angeles for Franklin, Tennessee, where she now works and resides. She sporadically attended English-language services at Brentwood Baptist Church two or three times a month.

On October 22, 2008, Ms. He filed an application for asylum, withholding of removal, and protection under the U.N. Convention Against Torture. The Department of Homeland Security initiated removal proceedings by issuing a Notice to Appear on November 26, 2008. At a preliminary proceeding held on December 17, 2008, Ms. He conceded to removability and acknowledged all factual allegations contained in the Notice.

In support of her application for asylum, Ms. He provided a copy of her I-589, a narrative statement, an I-94, a copy of her passport, a copy of her I-120, her household registration booklet, her diplomas, her photos, and background materials on conditions in China. In addition, she provided a letter from her mother, a letter from her neighbor in China, a letter from a fellow congregant in Los Angeles, flyers from the Brentwood Baptist Church, and photographs taken at the Brentwood Church.

On March 17, 2010, the immigration judge (IJ) denied Ms. He's application for asylum, withholding of removal, and protection under the Convention Against Torture, ordering Ms. He's removal from the United States to China. While finding the applicant's testimony credible, the IJ found that Ms. He failed to meet her burden of proof under the REAL ID Act. The main reason for the IJ's finding was Ms. He's failure to provide corroborative evidence of her claim, namely in the form of letters from church officials confirming her affiliation with churches in China and the United States. In the IJ's opinion, it would have been "quite simple to get letters from pastors of the

churches here in the United States"—thus, there was "really . . . no explanation as to why [Ms. He] did not pursue this form of corroborative evidence." The IJ also found that Ms. He did not adequately demonstrate past persecution. In doing so, the IJ explained that Ms. He's detention was "unfortunate," but "only once fold" and without residual consequences. The IJ emphasized Ms. He's ability to leave China on a valid passport and visa to study in the United States without hindrance from Chinese officials. With respect to the forced marriage, the IJ observed that the imbroglio with the director's son did not "even remotely suggest that it rises to the level of persecution under the [INA] and presiding case law." Finally, the IJ found that there was no demonstration of a fear of future persecution, as Ms. He's sporadic church attendance in the United States was unlikely to gain the attention of the Chinese government upon her return. Thus, Ms. He's application for asylum was denied.

Ms. He appealed to the Board of Immigration Appeals (BIA). In doing so, she asserted that the letters from her mother, neighbor, and fellow churchgoer were sufficient to provide corroborative evidence of her practice of faith. In the alternative, she asked that the case be remanded for further fact-finding as to the availability of corroborating letters from her pastor in China.

The BIA dismissed the appeal, adopting and affirming the IJ's decision. The BIA concluded that the IJ was correct in determining that the harm suffered by Ms. He did not rise to the level of persecution and that Ms. He failed to demonstrate a well-founded fear of persecution on account of her religion. In addressing the forced marriage, the BIA stated that the claim was "not on account of [Ms. He's] religion or any other protected ground" and thus could not be used to satisfy the burden

of proof necessary to establish asylum. Hence, the IJ's decision was affirmed. This petition for review followed.

## II. ANALYSIS

The Immigration and Nationality Act empowers the Secretary of Homeland Security and the Attorney General with the discretion to grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1)(A) (2006). "A refugee is defined as a person who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)). "Disposition of an application for asylum requires a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Id.* (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)).

Ms. He raises three challenges to the proceedings below. First, she argues that the IJ violated due process by failing to ask her why corroborative evidence was unavailable. Second, she challenges the IJ's finding that insufficient corroboration was provided regarding Ms. He's practice of faith. Finally, Ms. He contends that substantial evidence does not support the IJ's finding that the harm suffered by Ms. He did not rise to the level of persecution. In doing so, she asserts that the BIA failed to properly consider her forced marriage and improperly considered her possession of a valid Chinese passport.

A.      Standard of Review

"Where, as here, the BIA affirms an IJ's ruling and adds its own comments, we review both the IJ's decision and the [BIA's] additional remarks." *Lateef v. Holder*, 683 F.3d 275, 279 (6th Cir. 2012) (internal quotation marks omitted).  Constitutional questions are reviewed *de novo.  Stserba v. Holder*, 646 F.3d 964, 971 (6th Cir. 2011).  Factual determinations in a decision denying asylum are reviewed under a substantial evidence standard.  *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009).  Administrative findings of fact made in the proceedings below "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  Mere disagreements with these findings are insufficient to warrant reversal.  *See Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005).  Thus, the BIA's decision may only be reversed if it is "manifestly contrary to the law."  *Bi Xia Qu v. Holder*, 618 F.3d 602, 605 (6th Cir. 2010).

B.      Due Process Claim

A claim that an IJ failed to develop the record is one of procedural due process.  *See K.E. v. Gonzales*, 233 F. App'x 442, 446-47 (6th Cir. 2007).  "Although an alien's due process challenge generally does not require exhaustion[,] . . . the alien must raise correctable procedural errors to the BIA."  *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).  "[T]he issue must be reasonably developed in the petitioner's brief to the BIA."  *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009).  Otherwise, the issue is forfeited.  *See id.*

Ms. He's contends that the IJ failed to develop the record by denying her the opportunity to explain the lack of corroborative evidence; while she does not label it as such, her argument is one of due process.  We lack jurisdiction over this claim, however, because Ms. He failed to properly

raise it in the prior administrative proceeding. *See Perkovic*, 33 F.3d at 619. There is no express assertion of a due process claim in her appeal before the BIA; the BIA brief merely notes in passing that "[t]he record did not show anyone asking . . . whether it would be possible for her to get a letter from the 'pastor' in China." Failing to discern a "reasonably developed" allegation of error raised before the BIA, we deem the issue to be forfeited. *See Khalili*, 557 F.3d at 433.

> C.      The IJ's Finding that Ms. He Provided No Corroborative Evidence Regarding the Practice of Her Faith

Under the REAL ID Act of 2005, an IJ may determine that an applicant "should provide evidence [that] corroborates otherwise credible testimony," and the "evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1229a(c)(4)(B). The failure to provide such corroborating evidence "can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004). An agency finding as to the availability of corroborative evidence may not be reversed "unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010); *see also* 8 U.S.C. § 1252(b)(4)(B).

Ms. He claims that she provided corroborative evidence of her faith by proffering letters from her mother, a neighbor in China, and a fellow churchgoer in Los Angeles. The IJ found that, despite these presentations, Ms. He failed to meet her burden of proof; corroborative evidence in the form of letters from churches in China and the United States could still be obtained, yet were not

produced. No reasonable explanation was provided for their absence, which cemented the IJ's finding on the burden of proof.

We see no reason to disturb the IJ's findings. Despite her testimony regarding the frequency of her church attendance in China and the role of her mother as a conduit for continued communication with the Chinese church, Ms. He failed to obtain a corroborating letter from a church official. Instead, she procured letters from her mother and a neighbor, which were of questionable probative value. In addition, Ms. He failed to produce any letters from church officials corroborating her attendance at churches in the United States, despite the absence of the religious suppression that may prevent her Chinese church from doing the same. Instead, she produced a letter from a fellow congregant in Los Angeles that failed to attest to the frequency of her church attendance and did not reveal much more than that they "went to church services together and [that] she is a very devout Christian." The letter provides little probative value.

The paucity of substance in the evidence presented by Ms. He supports the IJ's conclusion that Ms. He failed to meet her burden of proof by failing to provide sufficient corroboration. Hence, we uphold the BIA's decision.

D.      The IJ's Finding that the Level of Harm Did Not Rise to an Extreme Level of Persecution

To qualify for refugee status, "an alien must establish either that he has suffered actual past persecution or that he has a well-founded fear of future persecution." *Pilica*, 388 F.3d at 950 (citing *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998); 8 C.F.R. § 208.13(b) (2004)). Persecution is "an extreme concept that does not include every sort of treatment our society regards as offensive."

*Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004). A well-founded fear of persecution is comprised of "both a subjective and an objective component." *Gilaj v. Gonzales*, 408 F.3d 275, 283-84 (6th Cir. 2005).

Persecution requires "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. It may present itself in the form of "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Gilaj*, 408 F.3d at 285 (quoting *De Leon v. INS*, 99 F. App'x 597, 598 (6th Cir. 2004)). "[T]he critical factor is the overall context in which the harmful conduct occurred." *Id.* As part of that context, we consider "the gravity of the circumstances presented." *Id.*

Isolated incidents of physical abuse may be insufficient to compel a finding of persecution, even if the harm suffered is severe. *See id.* at 284 (explaining that a single beating may "offend[] one's sense of civilized governmental conduct," but "does not compel a finding of persecution"). Ms. He was detained for one period of eight days and was subjected to physical contact on two occasions: the first was an incident where officials pulled her hair and slapped her face twice; the second was an incident where she was forced to kneel and was kicked in the legs and back seven or eight times. However uncivil and distasteful the governmental conduct may have been, the severity of conduct pales in comparison to other cases where no past persecution was found. *See, e.g.*, *Lian v. Holder*, 414 F. App'x 790, 792, 794 (6th Cir. 2011) (concluding that the beating of an asylum applicant with a wooden club and scarring of the applicant with cuts from a steel blade did not rise to the level of persecution). Moreover, the fact that Ms. He suffered only minimal injuries and

required no medical treatment further undermines the conclusion that a finding of past persecution is compelled. *See Biriiac v. Holder*, 399 F. App'x 27, 35 (6th Cir. 2010).

Ms. He argues that the IJ should have considered the forced marriage as evidence of mixed-motive religious persecution. We disagree. To properly conclude that a state action is premised on mixed motives, the action must be motivated, at least in part, "on account of an enumerated ground." *See Bi Xia Qu*, 618 F.3d at 608. In contrast, Ms. He's claim is one of *post hoc ergo propter hoc*: the physical detention was merely the antecedent event that led to the marriage proposal, and the religious cause for the initial detention was not the *motivation* for the marriage to occur. There is nothing to suggest that the director forced Ms. He into marriage because of her religion and any negative perceptions attendant to the Christian faith. Indeed, the record suggests that his motives were entirely personal; the director used the force of his office to make marital arrangements because his son could not find a spouse on his own.

Even in her own testimony, Ms. He conceded this point. She had two distinct reasons for departing China: first, "because [of her] participation in [the] underground church"; second, "because [she] was forced to marry the son of the [PSB director]." We recognize the same distinction and discern no mixed motive persecution. Leverage obtained from a prior harmful action motivated by religion but used for a purely personal gain does not create the causal nexus required for a mixed motive persecution. Hence, the BIA's findings on the relevance of the marriage were supported by substantial evidence.

Finally, Ms. He contends that the IJ placed improper emphasis on her possession of a valid Chinese passport in determining whether she was persecuted and notes that a passport is an

"unreliable factor to consider in asylum." We have previously said otherwise, holding that "an applicant's ability to obtain a government-issued passport may undermine his eligibility for asylum and withholding of removal." *Ly v. Holder*, 376 F. App'x 512, 518 (6th Cir. 2010). We observe no error in the IJ's consideration of this fact. Therefore, the IJ's conclusion of no persecution is supported by substantial evidence.

### III. CONCLUSION

For the reasons above, the petition for review is **DENIED**.