NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0032n.06

Case No. 21-3465

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 19, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| WILSON LOPEZ-LOPEZ, | ) | |
| Petitioner, | ) ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| Respondent. | ) | |
| | ) | OPINION |
| | ) | |

Before: SILER, COLE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Wilson Lopez-Lopez, a native and citizen of Cuba, seeks review of a Board of Immigration Appeals order denying his application for asylum. Because substantial evidence supports the Board's order, we deny his petition.

I.

On May 22, 2019, Lopez-Lopez, a Cuban native, arrived at the Havana airport and boarded a flight bound for Nicaragua. From there, he traveled through Guatemala, Honduras, and Mexico, eventually making his way to the United States. After Lopez-Lopez presented himself at the border, he was sent back to Mexico to await immigration proceedings. But Lopez-Lopez never made it to his hearing. Instead, he crossed the border unlawfully and headed north to Canada. But the Canadian government returned Lopez-Lopez to the United States, where he was detained. Lopez-Lopez then applied for asylum, withholding of removal, and Convention Against Torture (CAT) relief.

During Lopez-Lopez's hearing before an Immigration Judge (IJ), he described the difficulties he faced in Cuba as a political dissident and private-business owner. Lopez-Lopez opened his first pizzeria in Holguín, a province and city in Cuba, between 2011 and 2013. Around the same time, Lopez-Lopez says he became an outspoken opponent of communism. According to Lopez-Lopez, this led the local police to start harassing him. They audited him twice, searched his pizzeria once, levied fines, and threatened to make him disappear. But the tipping point came in 2017 when one officer, Osmani, hit Lopez-Lopez over the head with a club. Lopez-Lopez had to visit a hospital for treatment, receiving stiches to close the wound.

Soon after the incident with Osmani, Lopez-Lopez relocated to Havana. There he opened a new pizzeria. For a time, he kept the Holguín pizzeria open too—only shuttering the business after a supply shortage forced him to close its doors. The pizzeria in Havana fared better. Lopez-Lopez managed to get it up and running only one or two months after relocating. And local police no longer fined him.

But the situation deteriorated again in the spring of 2019. Lopez-Lopez recounts that he received a visit from Osmani, who reportedly traveled 14 hours by bus to visit him in Havana. When Osmani stopped by Lopez-Lopez's new pizzeria, he warned him not to attend Cuba's Labor Day celebrations. When Lopez-Lopez retorted that he didn't plan to go, Osmani hit him on his back. This time, Lopez-Lopez didn't seek medical help. And he admitted he wasn't bothered by the police again. Still, the second encounter with Osmani proved to be Lopez-Lopez's breaking point. He decided to leave Cuba. And he shortly closed the pizzeria, obtained a Nicaraguan visa, and booked a plane ticket out of the country. After Lopez-Lopez left Cuba, police visited his parents' home once to ask about him.

Lopez-Lopez's troubles followed him out of Cuba. Fast forward to his first attempt to gain entry to the United States. Lopez-Lopez alleges a Mexican cartel kidnapped him and confiscated his backpack full of evidence as he awaited his immigration proceeding in Mexico. Seven days after the kidnapping, he says he managed to escape with his passport and birth certificate but none of the other documents. He then crossed the United States border clandestinely because he feared reprisals from the cartel.

The IJ listened to Lopez-Lopez's testimony and examined all the evidence, including documents Lopez-Lopez's family sent from Cuba. Ultimately, the IJ denied Lopez-Lopez's application for asylum, withholding of removal, and CAT protection. Although the IJ determined Lopez-Lopez testified credibly about his two pizzerias and his opposition to communism, he found Lopez-Lopez's testimony about the two injuries and kidnapping unconvincing. Credibility aside, the IJ found that the harassment Lopez-Lopez experienced didn't establish past persecution or a well-founded fear of future persecution.

The Board of Immigration Appeals affirmed. It assumed Lopez-Lopez testified credibly. Still, it found "the totality of the harm" Lopez-Lopez experienced didn't constitute persecution or give Lopez-Lopez a reasonable fear of future persecution. (A.R., BIA Decision, 3.) The Board also noted that Lopez-Lopez only challenged the denial of asylum. This meant that Lopez-Lopez waived any claims about the denial of withholding of removal and the request for CAT protection.

Lopez-Lopez then appealed the Board's decision to this Court.

II.

To qualify for asylum, an applicant must prove that he is a refugee—someone who "is unable or unwilling to return" to his home country "because of [past] persecution or a well-founded fear of [future] persecution." 8 U.S.C. § 1101(a)(42). The applicant must also show this

persecution was motivated by "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* If an applicant establishes past persecution, he's entitled to a presumption of future persecution, which the government must then rebut. *See* 8 C.F.R. § 1208.13(b)(1). But if an applicant can't meet the past persecution threshold, the burden of proving future persecution stays with him. *See Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006). And he must show that his fear of future persecution is both subjectively genuine and objectively reasonable. *Id.*

Whether an applicant meets the past or future persecution threshold is a finding of fact we review under the substantial evidence standard. *See Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). This means we must accept the Board's findings "unless any reasonable adjudicator would be compelled to conclude" otherwise. 8 U.S.C. § 1252(b)(4)(B). Put another way, we will only reverse the Board's denial of asylum if the record evidence "not only *supports* that conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1. Because the Board reviewed the IJ's order and issued a separate opinion, we review the Board's decision as the final agency action. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). But where, as here, the Board affirmed and adopted part of the IJ's reasoning, this Court also reviews the relevant portions of the IJ's original order. *Id.*

A.

We begin with past persecution. Lopez-Lopez's claim turns on whether his interactions with Osmani and the targeting of his pizzerias constitute mere harassment or rise to the level of persecution. Persecution requires more than "a few isolated incidents" of harassment, non-life threatening physical abuse, or verbal intimidation. *Gilaj v. Gonzales*, 408 F.3d 275, 284–85 (6th Cir. 2005). True, a single incident may suffice if it is sufficiently severe. *See Mohammed v. Keisler*,

507 F.3d 369, 371 (6th Cir. 2007). But suffering a physical or an economic injury, without more, does not establish past persecution.

Instead, the conduct must "cross the line" from harassment to persecution. *Gilaj*, 408 F.3d at 285 (internal quotations omitted). Actions that might cross this line include: "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Id.* And we consider these actions "in the aggregate and in light of the overall context" of the applicant's experience. *Id.* at 287.

With these principles in mind, we first turn to Lopez-Lopez's description of physical abuse. He alleges that Osmani struck him twice: once in 2017 and again in 2019. After the first incident, Lopez-Lopez visited the hospital and received stitches. The second incident didn't require medical treatment, and Lopez-Lopez stayed in Havana for a month after with no issue. Lopez-Lopez presented little evidence to corroborate his account of either encounter with Osmani. The hospital report for the first incident described the cause of injury as an "accident." And although Lopez-Lopez testified that his parents and employees witnessed both incidents first-hand, none submitted an affidavit describing either attack.

The Board determined these "isolated incidents of limited severity" did not amount to persecution. (A.R., BIA Decision, 3.) Because the record does not compel the opposite conclusion, we hold the same. This conclusion tracks with our past decisions that hold that similar, and even more severe, conduct does not establish past persecution. *See, e.g.*, *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (finding of persecution was not compelled where the petitioner was twice arrested and detained for a week and, on a third occasion, was beaten by police, resulting in week-

long hospital stay for head injuries)[1]; *accord Traore v. Holder*, 358 F. App'x 677, 679–80 (6th Cir. 2010) (recognizing that even though "a single beating offends one's sense of civilized governmental conduct," it does not compel a finding a persecution (citation omitted)).

Next, we consider the economic actions taken against Lopez-Lopez. In some cases, "[e]conomic deprivation" can amount to persecution. *Stserba v. Holder*, 646 F.3d 964, 976 (6th Cir. 2011) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 n.9 (6th Cir. 2011)). But that deprivation must be "sufficiently severe," resulting in conditions that "constitute a threat to the individual's life or freedom." *Al Qudah v. Holder*, 529 F. App'x 499, 504 (6th Cir. 2013) (citation omitted); *see also Scavenger v. Mukasey*, 313 F. App'x 816, 817 (6th Cir. 2008) (noting applicants must establish that they "face[] a 'deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment, or other essentials of life'") (quoting *In re T-Z*, 241 I. & N. Dec. 163, 171, 173 (BIA 2007)). On the other hand, "enforcement efforts resulting in

---

[1] *See also Marikasi v. Lynch*, 840 F.3d 281, 289–90 (6th Cir. 2016) (finding of persecution was not compelled where the petitioner was beat by her husband for her religious beliefs and hospitalized); *Mohammed*, 507 F.3d at 371 (same where the petitioner was held in police custody for three days and was slapped and kicked); *Lumaj*, 462 F.3d at 577 (same where the applicant was beaten and suffered bodily injuries but was not detained, imprisoned, tortured, or sexually assaulted); *Pilica*, 388 F.3d at 954 (same where the petitioner was twice arrested and detained for a week and, on a third occasion, was beaten by police, resulting in a week-long hospital stay for head injuries); *Mullai v. Ashcroft*, 385 F.3d 635, 637–39 (6th Cir. 2004) (same where the petitioner was arrested three times and, on the third arrest, was beaten and kicked by police); *Agu v. Barr*, 812 F. App'x 324, 328–29 (6th Cir. 2020) (same for a withdrawal of removal where the applicant was kicked and slapped); *Xuefang He v. Holder*, 502 F. App'x 430, 435 (6th Cir. 2012) (same where the petitioner was slapped and kicked twice during an eight-day detention); *Lian v. Holder*, 414 F. App'x 790, 792–94 (6th Cir. 2011) (same where the applicant was beaten with a wood club and cut with a steel blade, leading to scarring); *Traore,* 358 F. App'x at 679–80 (same where the petitioner was beaten once by military police); *Dubal v. Mukasey*, 257 F. App'x 875, 877–78 (6th Cir. 2007) (same where the petitioner was detained three times over 10 years and twice alleged she was physically abused); *Gjokic v. Ashcroft*, 104 F. App'x 501, 502, 505 (6th Cir. 2004) (same where the applicant was detained for several days and beaten with rubber sticks).

moderate economic impact" do not meet this threshold. *In re J-H-S-*, 24 I. & N. Dec. 196, 200 (B.I.A. 2007).

Lopez-Lopez claims that Cuban officials regularly confiscated vital property and equipment from his pizzerias, seized his merchandise, and imposed large fines on him. He also says the local authorities summoned him many times for questioning, often threatening to make him disappear. But the IJ found the record "simply" did not "support[]" Lopez-Lopez's story of extensive summons, seizures, and fines. (A.R., IJ Oral Decision, 305.)

We agree. Although Lopez-Lopez's documents showed Cuban police audited him for allegedly using "illegal flour" twice and searched his Holguín pizzeria once, none backed up his claims of summons and extensive fines. What's more, the audits and the search were only warnings, none resulted in an actual citation or penalty. Lopez-Lopez also testified he was able to quickly open a pizzeria in Havana and only shut down the Holguín operation because of supply shortages. And he admitted that in his seven years of operating pizzerias, the police never acted on their threat to disappear him. Two audits, a search, and unfulfilled threats do not show economic persecution amounting to the "deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, [or] employment." *Scavenger*, 313 F. App'x at 818 (citation omitted). The record does not support, much less compel, the conclusion that Lopez-Lopez suffered economic deprivation that was severe enough to establish persecution.

Lopez-Lopez counters that the Board "failed to consider the aggregate of all [the] incidents" together. (Lopez-Lopez Br. at 16.) Doing so, Lopez-Lopez asserts, would have shown his experiences established past persecution and were "not merely unfortunate instances of harassment." (*Id.*) But this argument misses the mark. The IJ considered the "physical injuries" and the economic harassment together to find that Lopez-Lopez did not establish past persecution.

(A.R., IJ Oral Decision, 303-05.) The Board did the same, expressly assessing the harassment, threats, property confiscation, and two injuries in short order. Contrary to Lopez-Lopez's assertions, both evaluated Lopez-Lopez's experience in the aggregate.

To be sure, the aggregate of Lopez-Lopez's abuse "if true, is reprehensible." *Hana v. Gonzalez*, 157 F. App'x 880, 884 (6th Cir. 2005). But persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Marikasi v. Lynch*, 840 F.3d 281, 288 (6th Cir. 2016) (quoting *Lumaj*, 462 F.3d at 577); *accord Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1291–93 (11th Cir. 2021) (finding a Cuban petitioner did not establish past persecution even where his "combined experiences" included a beating from police, threats, detention, lost jobs, and cell phone and laptop confiscation). And Lopez-Lopez's experience in Cuba, unfair and unjust as it may be, does not suffice to establish past persecution.

Because substantial evidence supports the Board's conclusion that Lopez-Lopez failed to satisfy the past persecution threshold, we affirm its decision.

B.

Because Lopez-Lopez has not shown past persecution, he bears the burden of showing a "well-founded fear" of future persecution. 8 C.F.R. § 1208.13(b)(1); *see Marikasi*, 840 F.3d at 291. This showing has both an objective and subjective competent. As to the subjective component, he "must [] actually fear" persecution "upon return to his country." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) (quoting *Perkovic v. INS*, 33 F.3d 615, 620–21 (6th Cir. 1994)). And for the objective component, Lopez-Lopez must "present evidence establishing an objective situation" that renders his fear "reasonable." *Id.* (internal quotations omitted). What's more, Lopez-Lopez "must offer reasonably specific information showing a real threat of *individual* persecution." *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) (emphasis added) (quoting

*Mateo v. Gonzales*, 217 F. App'x 476, 484 (6th Cir. 2007)). "Speculative conclusions or mere assertions of fear of possible persecution" will not do. *Id.*

The IJ found that Lopez-Lopez failed to satisfy the objective component, and the Board affirmed. Substantial evidence supports its decision. Start with Lopez-Lopez's business history. He successfully operated his pizzerias for almost seven years without experiencing persecution. True, the record "indicate[s] that the Cuban government harasses, discriminates, and otherwise harms private business owners on occasion." (A.R., BIA Decision, 3; *see also* A.R., IJ Oral Decision, 306 (agreeing that "the documentary evidence [] tend[s] to show that the Cuban government is not strongly supportive . . . of private businesses, and does discriminate against such individuals . . . .").) But harassment and discrimination, without more, cannot establish persecution. And in Lopez-Lopez's case, he effectively ran his private business for seven years despite his public critique of Cuba' communist regime. This record does not show a "'reasonable possibility' that [Lopez-Lopez] would suffer" persecution amounting to economic deprivation upon his return to Cuba. *See Lumaj*, 462 F.3d at 578.

Lopez-Lopez offers two alternative routes to establish a well-founded fear of persecution. Neither convinces. First, Lopez-Lopez notes that the Holguín police have asked his father about his whereabouts. But the fact that the Cuban police "continue[] to monitor" Lopez-Lopez after his departure "does not compel a finding that they plan to persecute him." *See Aguilera Fernandez v. U.S. Att'y Gen.*, 857 F. App'x 487, 494 (11th Cir. 2021). This is especially true when Lopez-Lopez did not submit evidence that showed the police told his family they would imprison him or otherwise harm him.

Next, Lopez-Lopez points out that Cuba "is known to repress and punish those who criticize the communist party." (Lopez-Lopez Br. at 17). And he cites the Cuba 2019 Human

9

Rights Report to bolster his argument. We have no doubt the Report accurately describes the Cuban government's suppression of unfavorable political expression and repression of the political dissidents who speak up against it. But this fact alone does not show the police will single Lopez-Lopez out for persecution. And Lopez-Lopez has not offered "specific" evidence establishing why "a real threat of *individual* persecution" is likely in his case. *See Mapouya*, 487 F.3d at 412 (emphasis added) (citation omitted). Despite Lopez-Lopez's criticism of the Cuban regime, he managed to operate a private business for seven years. He also obtained a Nicaraguan visa and left the country without issue. Given this evidence, the Board's conclusion that Lopez-Lopez failed to establish a well-founded fear of future persecution must stand.

C.

Two final points. First, Lopez-Lopez challenges the IJ's credibility finding. Although the IJ found Lopez-Lopez's testimony "mostly consistent[]," he doubted Lopez-Lopez's accounts of physical abuse at the hands of Osmani. (A.R., IJ Oral Decision, 302.) This credibility finding, Lopez-Lopez contends, was erroneous. Yet the Board's opinion makes clear that it did not reach the issue. Instead, it assumed that Lopez-Lopez testified credibly and held that "the totality of the harm [Lopez-Lopez] experienced in Cuba" did not establish persecution. (A.R., BIA Decision, 3.)

We "generally may not address an issue that the Board did not reach." *Mbonga v. Garland*, 218 F.4th 889, 893 (6th Cir. 2021) (citing *INS v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam)). Lopez-Lopez recognizes as much, acknowledging that "[t]he Board did not reach the issue of credibility." (Lopez-Lopez Br. at 19.) Because the Board did not adopt the IJ's credibility finding as part of its final order, we decline to revisit the issue now. *See* 8 U.S.C. § 1252(a)(1).

Next, Lopez-Lopez contends the IJ unreasonably cast aside his testimony about the kidnapping and loss of evidence in Mexico. He criticizes the IJ for finding his kidnapping

"implausible" and failing to cite the "country condition" evidence that made it so. (Lopez-Lopez Br. at 23-24.) But Lopez-Lopez's account doesn't tell the whole story. The IJ noted that even if he credited Lopez-Lopez's testimony, "nothing in the record would leave the [c]ourt to believe that there was a big stack of documents that would absolutely corroborate" any persecution. (A.R., IJ Oral Decision, 304.) In any event, the Board fully credited Lopez-Lopez's testimony. And despite that testimony, it still decided that Lopez-Lopez's ordeal in Cuba did not amount to past persecution or give him a reasonable fear of future persecution. Because the Board assumed Lopez-Lopez testified truthfully about the kidnapping, the IJ's contrary finding is outside the scope of our review, just like the credibility findings.

## III.

For these reasons, we deny Lopez-Lopez's petition for review.