RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BABACAR GAYE,

      *Petitioner,*

   *v.*

LORETTA E. LYNCH, Attorney General,

      *Respondent.*

No. 14-3652

On Petition for Review of an Order
of the Board of Immigration Appeals
No. A079 260 838.

Decided and Filed:  June 9, 2015

BEFORE:  BATCHELDER and WHITE, Circuit Judges; COX, District Judge[*]

_____

**COUNSEL**

_____

**ON BRIEF:**  Edward W. Farrell, RUSSELL IMMIGRATION LAW FIRM, Louisville, Kentucky, for Petitioner.  Anthony C. Payne, Jesse M. Bless, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

    BATCHELDER, J., delivered the opinion of the court in which COX, D.J., joined. WHITE, J. (pp. 14–22), delivered a separate dissenting opinion.

_____

**OPINION**

_____

    ALICE M. BATCHELDER, Circuit Judge.  Petitioner Babacar Gaye is an illegal alien who seeks relief from a removal order entered against him.  Gaye, a Mauritanian who did not

_____
[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

apply for asylum within a year of entering the United States, argues that his asylum claim should be granted, that he was entitled to notice regarding the sort of evidence he needed to prevail on his claims and thus we should withhold removal, that his counsel was ineffective, and that his due-process rights have been violated. Because we lack jurisdiction to consider his asylum claim, we DISMISS that part of his petition. Because Gaye did not raise his constitutional claim below, and thus failed to exhaust his administrative remedies, we DISMISS that part of his petition as well. We hold as well that federal law does not require courts to give aliens advance notice of the sort of evidence they must produce to prevail in their efforts to remain in the United States, and DENY the petition for review on all remaining issues.

## I.

According to his application for asylum and his testimony before Immigration Judge Lawrence Burman, Babacar Gaye is an ethnic Wolof who was born in Mauritania. Gaye claims that he, like his parents, was a member of the Union for Democrats (UFD) political party, which "advocate[d] for the rights of blacks in Mauritania," and participated in demonstrations against the government. Gaye claims that in 1993, white Moor soldiers arrested Gaye and his family at their home and seized their identification cards. Gaye claims that he and others were taken to a military camp, where the soldiers severely beat Gaye, referred to him as a slave, and forced him to perform hard labor. He further claims that after three weeks, the soldiers forced him and his family to cross into Senegal. The soldiers allegedly told Gaye and his family that they should be slaves and did not belong in Mauritania because they were black and members of the UFD, and threatened to kill them if they returned to Mauritania.

Gaye spent the next three or four years in a refugee camp operated by the Red Cross near Dakar, Senegal. There, he met Ousman Ba, who rented a house for Gaye and his family. After three years, Ba helped Gaye come to the United States by providing Gaye with a plane ticket and a false Senegalese passport that had Gaye's picture but the name of Samba N'Diaye. Gaye agreed to reimburse Ba after he started working in the United States. Gaye's family remained in Senegal.

Gaye claims to have arrived in the United States on October 17, 2000, at New York's John F. Kennedy International Airport (JFK). The man with whom Gaye traveled took the passport after Gaye cleared immigration. Ba allegedly arranged for Alie Ceesay to pick Gaye up at the airport, and Gaye apparently stayed with Ceesay in New York for two weeks. He then moved to Cincinnati, Ohio, and after approximately one year, to Louisville, Kentucky.

Gaye filed an application for asylum on February 12, 2001. In July 2001, the Immigration and Naturalization Service (now the Department of Homeland Security) served Gaye with a Notice to Appear (NTA), alleging that he was a native and citizen of Mauritania, although not contesting at that time that he had entered the United States around October 17, 2000, and that he did not possess or present a valid entry document. Gaye was charged as removable under 8 U.S.C. § 237(a)(1)(A). Gaye appeared with counsel before an Immigration Judge (IJ) in March 2003, admitted the allegations in the NTA, and conceded his removability. He sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).

In 2006 and 2007, Gaye testified in support of his asylum application before IJ Burman. Gaye also offered a copy of his purported birth certificate; a letter from his cousin Amadou Gaye, informing Gaye that Mauritanian officials were still searching for him; a letter from Ba, warning him to take care in communicating with his family and friends in Mauritania because authorities were continuing to seek information about Gaye's whereabouts; news articles and reports on conditions in Mauritania; a letter from Alie Ceesay, stating that he picked Gaye up from JFK on October 17, 2000, and hosted him for two weeks; the testimony of Abdulai Aw, a Mauritanian national who was granted asylum in the United States in 2004; and the testimony of Sait Ceesay, brother of Alie Ceesay. Aw testified that he met Gaye on two occasions while at a soccer tournament in Mauritania and that he again met Gaye in the United States in 2005. He also testified that he did not know of the problems Gaye had in Mauritania. Sait Ceesay testified that his brother picked Gaye up at the airport on October 17, 2000.

At the conclusion of an April 2007 hearing, IJ Burman rendered an oral decision denying Gaye's application for asylum, withholding of removal, and relief under the CAT. IJ Burman found that Gaye did not carry his burden of showing that he filed his asylum application within

one year of arriving in the United States, noting that there is no record of an alien being admitted into the United States at JFK on October 17, 2000, under the name Gaye claimed was on his fake passport. The IJ's denial of asylum, withholding of removal, and relief under the CAT was also based on his finding that Sait Ceesay was not a credible witness and that, although he did not testify, Alie Ceesay's letter "really could require some cross-examination." Burman found that Gaye was not credible (1) because of discrepancies between Gaye's claim that he was forcibly expelled from Mauritania in 1993 and reports that such mass deportations took place between 1989 and 1991; (2) it is not plausible that the soldier's actions were politically motivated since they followed the pattern of ethnic cleansing; and (3) it is implausible that the soldiers would have continued searching for Gaye after his departure from Mauritania. Burman further found that Gaye's submissions regarding slavery would not have applied to him as a member of the Wolof ethnic group. Regarding the CAT, the IJ further found that Gaye would not likely be tortured if he returned to Mauritania.

Gaye appealed to the Board of Immigration Appeals (BIA), which concluded that the IJ erred in his analysis of Gaye's asylum claim. The BIA noted that "the main basis for the Immigration Judge's adverse credibility determination appears to be the Immigration Judge's finding that the date of [Gaye]'s alleged deportation from Mauritania is inconsistent with country conditions reports," and concluded that this finding was not supported by the record. The BIA remanded "for the Immigration Judge to make a specific assessment of [Gaye]'s credibility."

On remand, IJ Burman "carefully reviewed [his] decision, the evidence of record, the transcript of trial, and the BIA's remand order," but found that he could not "serve as an impartial and unbiased fact finder." The IJ stated that he "remain[ed] convinced to a moral certainty that [Gaye]'s testimony was false," but recused himself "[i]n order to do justice to [Gaye]."

Gaye's case was reassigned to Immigration Judge Rebecca Holt, who held a preliminary hearing to determine whether she needed to hold an evidentiary hearing to assess Gaye's credibility. She stated that she read the BIA's remand order to require a new hearing, expressed uncertainty as to whether she could make a credibility determination based on the transcripts or audio of the proceedings before IJ Burman, and noted that the Immigration and Nationality Act's

definition of credibility determinations "is based in part on seeing [Gaye]." Gaye stated he "would love to have a new hearing," and the Government agreed to a limited evidentiary hearing to update the record and assess Gaye's credibility. Although IJ Holt initially stated she would set the matter for a hearing, after reviewing the record as it then stood, she issued a written decision denying Gaye relief after "consider[ing] all of the evidence in the record," without a second hearing.

After reviewing the evidentiary record, IJ Holt found Gaye was not credible because there were inconsistencies in his testimony that appeared to be attempts to bolster his claims. She concluded that Gaye failed to prove by clear and convincing evidence that he filed his asylum application within the statutory one-year period, based on her finding that Gaye and Sait Ceesay were not credible, and that Alie Ceesay's letter deserved little weight. In addition, IJ Holt determined that Gaye should have obtained from Ba some evidence corroborating his entry date. The IJ further found that Gaye failed to provide sufficient corroborating evidence to meet his burden for withholding of removal and relief under the CAT.

Gaye appealed a second time to the BIA. The BIA dismissed the appeal on June 3, 2014, concluding that based on "the reasons stated in the Immigration Judge's decision," Gaye did not meet his burden of showing his application for asylum was timely, holding that "[o]ther than [Gaye]'s unpersuasive testimony, his witness'[s] unconvincing testimony," and Alie Ceesay's "brief written statement . . . , there [was] no evidence in the record to show [Gaye]'s entry date into the United States." The BIA also agreed with the IJ that Gaye failed to provide reasonably available corroborating evidence to support his withholding claim. Additionally, the BIA rejected Gaye's claim that he received ineffective assistance of counsel because Gaye did not proffer the evidence he alleged his former attorneys had failed to admit into the record and did not demonstrate whether that evidence would have changed the result. Finally, the BIA concluded Gaye was not entitled to relief under the CAT because he did not show that he was likely to face torture in Mauritania. Gaye now seeks review of the BIA's second decision, filing a timely petition for review on July 2, 2014.

**II.**

This case is largely governed by the version of the Immigration and Nationality Act of 1952 (INA), Pub. L. No. 82-414, 66 Stat. 163 (current version codified as amended in scattered sections of 8 U.S.C.), that was in effect in 2001. The INA was subsequently amended again by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. We review de novo both questions of subject-matter jurisdiction and questions of law. *Giraldo v. Holder*, 654 F.3d 609, 610 (6th Cir. 2011). This court sustains the BIA's denial of withholding of removal unless the denial is "manifestly contrary to law." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(C)). We review findings of fact, including credibility determinations, for substantial evidence. *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012). "The substantial-evidence standard requires us to defer to the agency's findings of fact if supported by reasonable, substantial, and probative evidence on the record considered as a whole. Under this standard, we will not reverse a factual determination . . . unless we find that the evidence not only supports a contrary conclusion, but compels it." *Id.* (citations and internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B). We defer to the BIA's interpretation of the statutes and regulations it administers, so long as the interpretation is reasonable. *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009). Finally, we review de novo an alien's claim of ineffective assistance of counsel in the Immigration Court. *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005).

**III.**

Gaye's appeal presents six issues. The BIA's decisions are final agency determinations for purposes of judicial review, and we are also empowered to review the IJ's opinion to the extent that the BIA adopts that opinion. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

**A.**

The first issue is whether we have jurisdiction to consider Gaye's application for asylum. Aliens may apply for asylum under 8 U.S.C. § 1158(a)(1). The opportunity to seek asylum "shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United

States." *Id.* § 1158(a)(2)(B). "No court shall have jurisdiction to review any determination of the Attorney General under [that provision]." *Id.* § 1158(a)(3). The INA's only two exceptions are if the Attorney General finds there are "changed circumstances" or "extraordinary circumstances" justifying a delay. *Id.* § 1158(a)(2)(D). Pursuant to the REAL ID Act, we have held that the only other exceptions to the statute's jurisdictional bar are for "constitutional claims or questions of law." *Almuhtaseb*, 453 F.3d at 747 (quoting 8 U.S.C. § 1252(a)(2)(D)) (internal quotation marks omitted).

Because the Attorney General decided that neither of the factual exceptions to the time limit (changed circumstances or extraordinary circumstances) is present here, we have the power to consider Gaye's application only if the REAL ID Act's exception for legal questions applies here. Section 1252(a)(2)(D)'s exception to the one-year jurisdictional bar is for pure questions of law. However, the question before us on this issue is factual, not legal. Although Gaye argues he was not given an adequate hearing, his briefs before the BIA argue only—as discussed in parts III.B & III.C, *infra*—that he was not given an opportunity by the IJ to prove that he qualified for withholding from removal, or alternatively for relief under the CAT. He never argued that he was denied a meaningful opportunity to present before an IJ sufficient evidence to prove he entered the United States on October 17, 2000, evidence that would make his asylum application timely.

Gaye filed his application on February 12, 2001. IJ Holt's finding that Gaye had entered the United States more than twelve months prior to that date—and thus was filing an untimely application—was not based solely on her finding that he was not credible. Instead, IJ Holt additionally found that Gaye had not carried his burden of proof when he presented his evidence to establish his entry date as October 17, 2000. The BIA determined that:

> for the reasons stated in [IJ Holt's] decision, we agree that [Gaye] did not show by clear and convincing evidence that his asylum application was filed within 1 year after the date of his arrival in the United States. Other than [Gaye's] unpersuasive testimony, his witness'[s] unconvincing testimony, and a brief written statement provided by [Gaye's] acquaintance . . . there is no evidence in the record to show [Gaye's] entry date into the United States . . . Hence, we agree with [IJ Holt] that [Gaye] is statutorily ineligible for asylum.

The burden was on Gaye to prove that he had entered the United States less than one year prior to filing his application, a burden that he could satisfy only by clear and convincing evidence. IJ Holt found that the first IJ had given Gaye an adequate opportunity to proffer evidence, and IJ Holt found that the evidence submitted by Gaye did not satisfy the high demands of the clear-and-convincing standard. The BIA affirmed IJ Holt's finding, and Gaye does not claim before this court that he had additional evidence that he was prepared to offer, but which the IJ disallowed.

Gaye's claim of a due-process violation, discussed *infra*, has nothing to do with carrying his burden of proof regarding his date of entry into this country imposed by 8 U.S.C. § 1158(a)(2)(B), and thus is not a "constitutional claim or question of law" that we are empowered to review. We therefore lack jurisdiction to review the BIA's determination that Gaye did not provide clear and convincing evidence to establish that he entered the United States less than one year before his February 12, 2001, application for asylum. Even if Gaye were raising a claim that he was entitled to notice regarding the burden of proof on the date of entry, for the reasons discussed in part III.B, *infra*, we would still lack jurisdiction because he did not raise that claim to the BIA, and thus did not exhaust his administrative remedies. We accordingly dismiss this part of Gaye's petition for review.

**B.**

We also lack jurisdiction to consider Gaye's due-process claim arising from IJ Holt's taking over the case from IJ Burman, who the BIA had initially ruled had developed a deficient record. IJ Holt ultimately made her adverse credibility determination without holding a new evidentiary hearing.

The Fifth Amendment Due Process Clause broadly requires that, "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V, cl. 4. This constitutional provision entitles an alien to a full and fair immigration hearing. *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012). Due process is violated if there is a defect in the proceeding that actually results in prejudice against the petitioner, one that leads to a substantially different outcome from the result he would have obtained absent the violation. *Id.*

No due-process violate occurs when a second IJ takes the case from an IJ who deems himself disqualified, *id.* at 473–74, including when the successor IJ specifically refuses the alien's request for an in-person hearing before the second IJ renders a final decision, *see id.* at 471. The second IJ "shall familiarize himself or herself with the record in the case and shall state for the record that he or she has done so." 8 C.F.R. § 1240.1(b). Holt made such a statement, declaring she had "considered all the evidence" and had become "familiar with the entire record of proceedings." Gaye now argues that since the original record had been found wanting by the BIA, the Due Process Clause required an in-person hearing before IJ Holt could rule he was not credible.

We cannot reach the merits of this claim. The INA explicitly follows the exhaustion doctrine common throughout administrative law, so we are empowered to "review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Gaye argues that his due-process claim was raised before the BIA, and therefore is proper for our review. It was not. Gaye objected to the IJ's decision-making and complained about his lawyer's performance, but nowhere argued to the BIA that the IJ's decisional method on this issue violated the Due Process Clause.

Regarding the Immigration Court's order of removal, we have jurisdiction only to review claims pertaining to that order that were subsequently ruled upon by the BIA. *Hamdi Al Khalili v. Holder*, 557 F.3d 429, 432–33 (6th Cir. 2009). Gaye did not exhaust his administrative remedies for a possible due-process violation on this issue, so there is no final agency action before this court on the question of whether IJ Holt's forgoing an in-person hearing was prohibited by the Fifth Amendment. We accordingly dismiss this part of Gaye's petition for lack of jurisdiction.

**IV.**

We have jurisdiction on the four issues remaining in Gaye's petition for review, and turn now to their merits.

**A.**

The first three issues are closely linked, concerning whether the BIA reversibly erred by denying Gaye the relief he seeks of being able to remain in the United States.  One is the BIA's denying Gaye's motion to withhold removal, and relatedly a second issue is whether Gaye can claim protection under the CAT.  Underlying both of these is whether the INA entitles Gaye to judicially provided notice as to what sort of evidence he must present to carry his burden to succeed on either withholding of removal or relief under the CAT.

"In order to qualify for withholding of removal, the petitioner must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Kaba v. Mukasey*, 546 F.3d 741, 751 (6th Cir. 2008).  Separately, in order to claim protection under the CAT, a petitioner must show by a preponderance of the evidence that he "would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2), *quoted in Kaba*, 546 F.3d at 751.

An IJ or the BIA may find a petitioner's uncorroborated testimony sufficient to justify withholding of removal if the testimony is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account." *In re M- D-*, 21 I. & N. Dec. 1180, 1182 (BIA 1998), *quoted in Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004).  But for testimony that does not meet that standard, the BIA's "corroboration rule" applies, requiring "corroborative evidence for virtually every significant instance of persecution" that petitioner claims. *Dorosh*, 398 F.3d at 382.  Documentation that is normally created or available in the originating country is generally sufficient to satisfy this rule.  *Id.*  Failure to produce "reasonably expected" evidence to corroborate a claim is sufficient to justify denial of withholding of removal. *See id.* at 383.  "The test is not whether this [c]ourt might have decided differently but whether the [c]ourt is compelled to conclude that the BIA erred." *Id.*  An IJ must provide specific reasons to support her credibility findings so as to allow meaningful review. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004).

Gaye does not come close to satisfying the very rigorous standards the law requires for either withholding removal or protection under the CAT.  Gaye did not produce evidence to

support various points in his narrative, such as letters from individuals who could corroborate his claims, whether family, or other individuals from whom he claims to have received help at particular points of time such as Ba. Nor does Gaye adequately explain the absence of such evidence. Multiple factors "go into the decision whether or not to believe a witness." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).[1] In immigration cases, an IJ may base an adverse credibility determination on inconsistencies and lack of specificity in the applicant's testimony regarding events central to the person's asylum claim. *Sylla*, 388 F.3d at 926. The Immigration Court's decision here is sufficient to facilitate meaningful review.

Gaye claims as an excuse that he was not given notice of what sort of corroborating evidence was required of him. But the INA—either the version that governed in 2001 or as amended by the REAL ID Act—does not entitle him to any such notice. The Seventh Circuit noted that such a rule would create the result "that a petitioner must receive additional notice from the IJ and then an additional opportunity to provide corroborative evidence before an adverse ruling, [and thus] necessitate two hearings." *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008); *accord Abraham v. Holder*, 647 F.3d 626, 633 (7th Cir. 2011). We note that the Ninth Circuit subsequently held not only that an alien is entitled to such notice, but indeed that the REAL ID Act unambiguously requires such notice. *Ren v. Holder*, 648 F.3d 1079, 1091–92 (9th Cir. 2011) ("Accordingly, the statute is clear. An applicant must be given notice of the

---

[1]The REAL ID Act prescribed rules for determining credibility:

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility[;] however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

8 U.S.C. § 1158(b)(1)(B)(iii). The Act does not apply in this case because Gaye's application for asylum was filed before the Act's effective date of May 11, 2005. REAL ID Act § 101(h)(2), 119 Stat. 305; *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). However, the parties agree that the quoted language is consistent with pre-REAL ID Act precedents, except as it relates to whether an inconsistency, inaccuracy, or falsehood goes to the heart of an applicant's claim.

corroboration required, and an opportunity to either provide that corroboration or explain why he cannot do so.").[2]

We agree with the Seventh Circuit, and disagree with the Ninth Circuit. The relevant provision of the INA states:

> Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

8 U.S.C. § 1158(b)(1)(B)(ii). This text does not suggest that the alien is entitled to notice from the IJ as to what evidence the alien must present. Even if it could be said that the statute is silent on the issue, and thus possibly could allow for such a construction (and we conclude it does not), it is plainly erroneous to say that the statute *unambiguously* mandates such notice. We hold that federal law does not entitle illegal aliens to notice from the Immigration Court as to what sort of evidence the alien must produce to carry his burden.

Moreover, even the INA did require some sort of notice, the record shows that IJ Burman continued the proceeding several times in order to provide Gaye with an opportunity to procure supporting evidence; these continuances were expressly for the purpose of obtaining certain documents, and so should have given Gaye adequate notice of what was required of him in any event. Gaye failed to carry his burden of demonstrating that the evidence is so one-sided in his favor as to compel this court to conclude the BIA erred by declining to withhold removal or grant relief under the CAT. But that aside, the INA does not require the Immigration Court to provide Gaye with notice in any event. We therefore deny this part of the petition.

**B.**

The final issue is that Gaye faults his former lawyer for ineffective assistance of counsel. Gaye claims that his counsel failed to provide the IJ with corroborating evidence, and was otherwise not adequately prepared to present his case. The BIA rejected Gaye's argument, noting that Gaye did not set forth the additional evidence he would have been able to introduce

---

[2]In doing so the Ninth Circuit purported to follow step one of the familiar two-step framework from *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44 (1984).

into the record if he had more effective counsel, and failed to establish that his case outcome was prejudiced by his counsel's ineffectiveness.

A petitioner must satisfy two conditions to claim ineffective assistance of counsel before the BIA. *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006). The first comes from *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1998). "Briefly, the *Lozada* requirements are (1) that the motion be supported by an affidavit detailing counsel's failings, (2) that counsel be informed of the allegations, and (3) that the motion show that disciplinary charges have been filed with the appropriate authority." *Sako*, 434 F.3d at 863. The second condition is that the petitioner must show that he was prejudiced by his counsel's ineffectiveness. *Id.* (discussing *In re Assad*, 23 I. & N. Dec. 553, 556 (BIA 2003)).

Gaye's claim fails on the merits regarding this second condition, so we need not explore the first. We already discussed in part III.B, *supra*, that a petitioner's claim that he was denied adequate process can succeed only if the claimant shows prejudice. *Abdallahi*, 690 F.3d at 472–73. Although *Abdallahi* did not involve questions of credibility, there is no reason the same rule would not likewise govern determinations of the sort of process an alien must receive whereby an IJ decides whether the petitioner is credible. Applying that rule here, Gaye presents no evidence that any of the purported errors of his former attorney would have led the Immigration Court to find Gaye's testimony credible, such that the IJ would have granted Gaye his requested relief to remain in the United States without additional corroborating evidence. Nor does Gaye carry his burden to show that his lawyer's performance resulted in a failure to develop the record in such a way that the Immigration Court would have been persuaded to allow Gaye to permanently stay in this country based on the evidentiary support for his claim. Gaye fails to show that the result would have been different for either of these reasons, and thus has not shown prejudice. We agree with the BIA, and accordingly deny this part of the petition.

**V.**

For these reasons, the petition for review is DISMISSED in part and DENIED in part.

---

**DISSENT**

---

HELENE N. WHITE, Circuit Judge, dissenting. I do not agree that we lack jurisdiction to review the BIA's decision insofar as it concluded that Gaye failed to show that his application for asylum was timely under 8 U.S.C. § 1158(a)(2)(B) and rejected his due-process claim. Further, I conclude the BIA erred when it relied on IJ Holt's credibility findings, and would remand for a proper determination of Gaye's credibility.

**I.**

The majority concludes we lack jurisdiction to entertain Gaye's challenge to the BIA's determination that he failed to show that his application for asylum was filed within the one-year deadline prescribed in 8 U.S.C. § 1158(a)(2)(B). The INA provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)]." *Id.* § 1158(a)(3). However, as the majority acknowledges, the INA confers jurisdiction to review "constitutional claims or questions of law."[1] *Id.* § 1252(a)(2)(D).

Although Gaye challenges the factual determination that he failed to show he entered the country on October 17, 2000—a determination I agree is beyond our review—he also argues that the BIA committed legal error in relying on IJ Holt's credibility determination impermissibly made on the record created by IJ Burman. We have jurisdiction to review the Board's ruling to the extent it involves Gaye's legal claims.

The majority also concludes that we do not have jurisdiction to review Gaye's due-process claim because he did not raise it first to the BIA and therefore did not exhaust his administrative remedies. However, the record shows Gaye argued to the BIA that IJ Holt "erred as a matter of law when, rather than taking testimony, the IJ based an adverse credibility finding solely on the transcripts of the hearings conducted by a different IJ," and requested a remand

---

[1]The parties do not dispute this provision's application to Gaye's case. The provision, which Congress added to the INA in the REAL ID Act, is applicable because the agency's final order of removal was made "before, on, or after the [REAL ID Act's] date of . . . enactment." REAL ID Act of 2005, sec. 106(b), Pub. L. No. 109-13, 119 Stat. 231, 311.

"[b]ecause the IJ could not have made a proper factual credibility determination without ever having an opportunity to observe demeanor of the witnesses or ask clarifying questions." The BIA understood Gaye to be making a due-process argument, as evidenced by its conclusion that "the record reveals that the respondent received a full and fair hearing on the merits of his claim," and determined that remand was unnecessary because IJ Holt complied with regulations by stating in her decision that she had considered all the evidence and that she was familiar with the entire record.[2] On appeal, Gaye continues to challenge the fairness of the proceedings below. Thus, we have jurisdiction to review this claim.

## II.

Gaye argues the BIA erred in dismissing his appeal based on IJ Holt's adverse credibility determination, which she made, in violation of his due process rights, without personally observing Gaye's demeanor, candor, and responsiveness to questioning, on a flawed and incomplete record created by IJ Burman, who admitted he could not serve as an impartial trier of fact. In evaluating whether Gaye was denied adequate process, this court considers (1) whether there was a defect in the proceeding, and if so, (2) whether the defect prejudiced him. *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012).

## A.

It is important to recall that the BIA vacated IJ Burman's ruling denying Gaye's claims, concluding that the IJ's credibility findings were not supported, and remanded "for the Immigration Judge to make a specific assessment of [Gaye]'s credibility." On remand, IJ Burman recused himself, finding that he could not serve as a fair and neutral factfinder because he "remain[ed] convinced to a moral certainty that [Gaye]'s testimony was false." IJ Holt, to whom the case was reassigned, found Gaye was not a credible witness based solely on the record created before IJ Burman. The question, then, is whether IJ Holt deprived Gaye of "a full and fair hearing" when she made an initial assessment of his credibility without ever observing him

---

[2]Tellingly, the Government on appeal does not argue we lack jurisdiction to review Gaye's due-process claim regarding IJ Holt's process of making credibility findings. It contends, rather, we do not have jurisdiction to review his claim that *IJ Burman* violated his due-process rights. Indeed, the Government offers an analysis of the first claim, but not the second. The Government is correct.

testify.  *Abdallahi*, 690 F.3d at 472 (citing *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005)).

The Fifth Amendment's guarantee of due process extends to persons in removal proceedings, entitling them to a full and fair hearing.  *Huicochea-Gomez v. I.N.S.*, 237 F.3d 696, 699 (6th Cir. 2001).  We consider the following factors in assessing the constitutional adequacy of the procedures afforded to Gaye:  (1) private interests at stake; (2) risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards; and (3) governmental interests, including costs and administrative burden of the additional process. *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 485 (6th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  The amount of process that is due varies according to the facts of each case, *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005), and the hearing guaranteed by the Fifth Amendment's Due Process Clause must be "appropriate to the nature of the case," *United States v. Raddatz*, 447 U.S. 667, 677 (1980) (internal quotation marks omitted); *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005).

Judges "must always be sensitive to the problems of making credibility determinations on the cold record." *Raddatz*, 447 U.S. at 679.  It is generally the case that "[t]he one who decides must hear," and must, for herself, assess credibility. *Id.* at 677 (quoting *Morgan v. United States*, 298 U.S. 468, 481 (1936)) (internal quotation marks omitted).  This is true as well in immigration cases.  Under the INA, an applicant may obtain asylum in the United States if the applicant proves to the Attorney General's satisfaction that he or she is a "refugee" entitled to a discretionary grant of asylum.  8 U.S.C.A. § 1158(b)(1) (West 2001); *Abay v. Ashcroft*, 368 F.3d 634, 636 (6th Cir. 2004).  The applicant bears the burden of showing that the applicant qualifies as a refugee "either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." *Abay*, 368 F.3d at 636 (quoting 8 C.F.R. § 208.13(b)). To obtain relief in the form of withholding of removal, the applicant must prove that there is a clear probability that the applicant will be subject to persecution if forced to return to the country of removal, a more stringent showing than what is required in an asylum proceeding. *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).  To establish a claim under the CAT, the applicant has the burden of showing "that it is more likely than not that he or she would be tortured if

removed to the proposed country of removal." *Id.* (quoting 8 C.F.R. § 208.16(c)(2) (2004)).  An immigration judge—and in some cases, an asylum officer—determines an applicant's eligibility for relief and has the authority to grant or deny the applicant's request.  8 C.F.R. §§ 208.14(a) (asylum); 208.16(a), (d) (withholding); 208.16(c)(4) (CAT).

The INA (both before and after Congress amended it in 2005 with the REAL ID Act) requires a hearing on any asylum application or request for withholding of removal.  8 U.S.C. §§ 1158 (asylum), 1229a (removal proceedings).  Notably, the INA requires an evidentiary hearing on removability to take place in person or through video conference.  A telephone conference is permitted only with the applicant's consent after the applicant has been advised of the right to proceed in person or through video conference.  *Id.* § 1229a(b)(2).  The INA additionally requires the IJ to receive evidence and examine witnesses, and provides that an applicant has the right to present evidence and to cross-examine the Government's witnesses. *Id.* § 1229a(b)(1), (b)(4)(B).  Although the pre-REAL ID Act INA did not explicitly require credibility determinations, agency decisions interpreting the Act did, as did the INA's implementing regulations.  Indeed, the regulations provide that an applicant's testimony, "if credible," may be sufficient to sustain the applicant's burden without corroboration.  8 C.F.R. §§ 208.13(a) (asylum), 208.16(a) (withholding of removal), 208.16(c)(2) (protection under the CAT).  The BIA accordingly views an applicant's credibility as a threshold issue.  *See In Re S-A-*, 22 I. & N. Dec. 1328, 1331 (BIA 2000); *In Re O-D-*, 21 I. & N. Dec. 1079, 1081 (BIA 1998).  An IJ must provide specific reasons to support her credibility findings so as to allow meaningful review.  *Sylla v. I.N.S.*, 388 F.3d 924, 926 (6th Cir. 2004).  The INA thus recognizes the importance of an IJ's ability to observe the proceedings and the testifying witnesses, and it strongly suggests an IJ may only assess the applicant's credibility after seeing and hearing the applicant testify, or after the applicant waives such opportunity.

Although 8 C.F.R. § 1240.1(b), which addresses immigration judge substitutions, requires the "new immigration judge [to] familiarize himself or herself with the record in the case and . . . state for the record that he or she has done so," it admittedly does not expressly require rehearings in certain circumstances or expressly limit the circumstances in which a successor IJ can judge credibility without hearing the witness testify.  In this respect, it lacks the

procedural safeguards found in its civil procedure analogue, Federal Rule of Civil Procedure 63, which authorizes a replacement judge to "proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties," but further requires that a successor judge, in a hearing or bench trial, rehear the testimony of a witness whose testimony is material and disputed and who is available to testify again without undue burden, if a party so requests. Fed. R. Civ. P. 63. The Advisory Committee's note to Rule 63 provides that the Rule "authorizes the substitute judge to make a finding of fact at a bench trial based on evidence heard by a different judge . . . in limited circumstances." Fed. R. Civ. P. 63 advisory committee's note to 1991 amendment. The Committee identified two such circumstances: First, where a testifying witness has become unavailable, the successor judge may treat the witness's transcribed testimony as a recorded deposition pursuant to Rule 32; and second, after the replacement judge determines that a witness's testimony is not material or is not disputed, the court may decline to rehear it. *Id.* The Advisory Committee cautions that the "court would . . . risk error to determine the credibility of a witness not seen or heard who is available to be recalled." *Id.* (citing *Anderson v. City of Bessemer*, 470 U.S. 564 (1985)). Because only triers of fact "can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said," *Anderson*, 470 U.S. at 575, determining credibility is a function fully committed to them, and it is assessed under the totality of the circumstances, *e.g.*, *id.*; *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (observing that in a habeas case, the district court makes "no credibility determination or other apparent finding of fact" when its decision is based on the transcript of the petitioner's state-court trial (internal quotation marks omitted)); *United States v. Word*, 72 F.3d 131 (6th Cir. 1995) (unpublished table decision). These principles reflect the common understanding of a full and fair hearing. *Abdallahi*, 690 F.3d at 472; *Huicochea-Gomez*, 237 F.3d at 699.

Here, the BIA vacated IJ Burman's order after concluding the record did not support his credibility findings, and remanded for a "specific assessment of [Gaye]'s credibility." IJ Holt was thus charged with making an initial determination of Gaye's credibility. The BIA's characterization of Gaye's claim as a request for "an *additional* opportunity to testify before the presiding Immigration Judge" thus misapprehends the very task it assigned to the IJ. (Emphasis added.) Gaye asked for an *initial* opportunity to testify before the IJ charged with judging his

credibility. Given the point at which IJ Holt took over the proceeding and her charge to make an initial determination of Gaye's credibility, her bare compliance with 8 C.F.R. § 1240.1(b) did not provide Gaye with all the process he was due.

Based on the authorities discussed above, I find implicit in the notion of a full and fair hearing an opportunity to testify before the IJ who is charged with making an initial assessment of the applicant's credibility. Although an IJ can weigh some credibility factors without observing the applicant testify (such as the consistency between transcribed testimony and other documentary evidence), a credibility finding, properly based on the totality of the circumstances, should weigh all relevant factors, including the witness's demeanor, candor, and responsiveness to questioning.[3] *See* 8 U.S.C. § 1158(b)(1)(B)(iii). IJ Holt was charged with making an initial assessment of Gaye's credibility; she could not properly make that assessment based solely on a cold record. *See Olle v. Henry & Wright Corp.*, 910 F.2d 357, 361 (6th Cir. 1990) (observing that a new trial is generally required when a deceased judge did not make findings of fact); *Arrow-Hart, Inc. v. Philip Carey Co.*, 552 F.2d 711, 713 (6th Cir. 1977) (holding court must conduct new trial, absent parties' consent, where deceased judge had not issued findings of fact

---

[3]As the Supreme Court recognized, several factors "go into the decision whether or not to believe a witness." *Anderson*, 470 U.S. at 575. And courts have long recognized that a witness's demeanor and presentation of testimony are critical factors a trier of fact should consider when assessing whether the witness is credible. *See, e.g.*, *id.*; *Raddatz*, 447 U.S. at 679; *N.L.R.B. v. Dinion Coil Co.*, 201 F.2d 484, 487 (2d Cir. 1952) ("Repeatedly, the courts have said that, since observation of such 'demeanor evidence' is open to a trier of the facts when witnesses testify orally in his presence, and since such observation is not open to a reviewing tribunal, that fact-trier's findings, to the extent that they comprise direct or 'testimonial' inferences, are ordinarily unreviewable. True, demeanor evidence may sometimes mislead; but our courts regard it nevertheless as an excellent clue to the trustworthiness of testimony. The Federal Civil Procedural Rules . . . reflect this view." (footnote omitted)); Fed. R. Evid. art. VIII advisory committee's note ("The demeanor of the witness traditionally has been believed to furnish trier and opponent with valuable clues."); 6th Cir. Criminal Pattern Jury Instructions 1.07(2)(D) ("Ask yourself how the witness acted while testifying. Did the witness appear honest? Or did the witness appear to be lying?").

In the immigration context, an IJ may base an adverse credibility determination on inconsistencies and lack of specificity in the applicant's testimony regarding events central to the person's asylum claim. *Sylla*, 388 F.3d at 926; *In Re S-A-*, 22 I. & N. Dec. at 1331. A credibility determination also may be based on the plausibility of the witness's account, in addition to demeanor and presentation of testimony. *Matter of A-S-*, 21 I. & N. Dec. 1106, 1111 (BIA 1998).

The INA, as amended by the REAL ID Act of 2005, similarly requires the IJ to:

> Consider[] the totality of the circumstances, and all relevant factors, [including] demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

and conclusions of law before death); *Havey v. Kropp*, 458 F.2d 1054, 1055 (6th Cir. 1972) (finding no error in replacement judge refusing to file opinion of deceased judge and denying plaintiff's petition after first holding limited evidentiary hearing on the one factual issue that existed and hearing further argument). Because Gaye's testimony is material to his claims for relief, and because the parties did not consent to the IJ's determination of Gaye's credibility based on the record, the IJ should have conducted a new hearing. The burden of a new hearing on the Government is minimal in light of the INA's hearing requirement, the BIA's remand order, and IJ Holt's earlier recognition that she needed to hold a hearing.

The Government contends our decision in *Abdallahi v. Holder*, 690 F.3d 467 (6th Cir. 2012), undercuts Gaye's claim of procedural error. In that case, we held that Abdallahi's due-process rights were not violated when the IJ who heard Abdallahi's testimony did not decide the case, and the substitute IJ denied his request for a new hearing and decided the case without observing him testify. *Id.* at 471. Because the successor IJ complied with 8 C.F.R. § 1240.1(b) by certifying that he sufficiently familiarized himself with the record, we concluded Abdallahi failed to show there was a procedural defect in his removal proceedings, and affirmed the BIA's determination that Abdallahi was inadmissible because the record evidence demonstrated that he had "committed, ordered, incited, assisted, or otherwise participated in the commission of any act of torture." *Id.* at 473–74 (quoting 8 U.S.C. § 1182(a)(3)(E)(iii)).

Despite the apparent similarity, *Abdallahi* is fundamentally different from the instant case in that Abdallahi's credibility was not at issue because his own testimony established that he participated in torture and was thus ineligible for adjustment of status. Unlike in *Abdallahi*, the IJ here was required to make an initial, "specific assessment of [Gaye]'s credibility."

**B.**

To establish prejudice, Gaye "must show due process violations led to a substantially different outcome from that which would have occurred in the absence of these violations." *Abdallahi*, 690 F.3d at 472 (quoting *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241–42 (6th Cir. 2007)) (internal quotation marks omitted). Regarding Gaye's asylum claim, IJ Holt found that Gaye did not establish his burden that he timely filed an application for asylum based in part on

Gaye's "own non-credible testimony" and Sait Ceesay's testimony, which the IJ found was not credible. The BIA adopted IJ Holt's reasons and added that there was no record evidence showing Gaye's entry date "[o]ther than [Gaye]'s unpersuasive testimony, his witness'[s] unconvincing testimony, and a brief written statement provided by . . . Alie Ceesay, which indicates that Mr. Ceesay 'picked up' [Gaye] at the John F. Kennedy airport on October 17, 2000." Had the IJ personally observed Gaye testify and found him credible, Gaye would be statutorily eligible for asylum.

Gaye similarly has shown prejudice with regard to his withholding claim. The BIA's decision recognized that IJ Holt denied Gaye's withholding claim based in part on an adverse credibility finding. And since Gaye's testimony, if credible, could have been enough to sustain his burden, Gaye was prejudiced by the IJ's failure to hear his testimony.

The Government contends, however, that the BIA's withholding decision rested solely on the IJ's determination that Gaye failed to meet his burden for withholding because he did not produce reasonably available corroborating evidence or adequately explain the absence of such evidence and not on the IJ's adverse credibility determination. The Government mischaracterizes the BIA's decision.

First, the BIA's decision expressly noted the IJ's "skepticism" of Gaye's testimony relating to an essential element of his withholding claim. Second, even if it were true that the BIA upheld the IJ's decision based on the corroboration rule, and not on adverse credibility determinations, Gaye could have met his burden solely with his credible testimony. In its decision, the BIA recalled that this court recognized in *Dorosh v. Ashcroft*, 398 F.3d 379 (6th Cir. 2004), that an applicant's failure to provide corroborating evidence that is reasonably ascertainable "*can* lead to a finding that an applicant has failed to meet her burden of proof." *Id.* at 382 (emphasis added) (internal quotation marks omitted). And, as the INA's regulations provide, an applicant's credible testimony may be sufficient to sustain the applicant's burden without corroboration. 8 C.F.R. § 208.13(a). Here, because the BIA's decision regarding withholding of removal does not purport to be based solely on the corroboration rule, the decision cannot properly be characterized as based solely on Gaye's failure to supply adequate

corroboration, and Gaye's credibility as a witness cannot be regarded as irrelevant to the outcome.

For these reasons, I would grant the petition for review, vacate the BIA's decision, and remand for further proceedings.[4]

---

[4]Because the BIA erred in relying on the improperly found credibility determinations, I do not address Gaye's other claims, including his second due-process claim—that IJ Burman created a flawed and incomplete record when he departed from his role as an impartial arbiter.