<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 18a0533n.06

Case No. 18-3212

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 25, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EMAD ADDIN MOHAMMAD SALEH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM A FINAL ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS, III, Attorney | ) | APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before: SILER and KETHLEDGE, Circuit Judges; OLIVER, District Judge.[1]

**SILER**, Circuit Judge. After Emad Saleh, a Jordanian citizen, committed a violent assault and robbery in Ohio, he was ordered removed from the United States. But he claims that if he returned to Jordan he would face torture or death. So he applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An immigration judge ("IJ") rejected his request, and the Board of Immigration Appeals ("BIA") affirmed. Saleh now petitions this court for review, arguing that the IJ erred (1) in finding his convictions particularly serious; (2) in concluding he would not face torture in Jordan; and (3) by prohibiting him from presenting his case. But because Saleh was convicted of an aggravated felony, our review is limited to

---

[1] Honorable Solomon Oliver, United States District Judge for the Northern District of Ohio, sitting by designation.

constitutional issues and questions of law. And because Saleh presents no constitutional or legal error infecting his case, we **deny in part** and **dismiss in part** his petition.

### Facts and Procedural History

Saleh and others beat a man in Montgomery County, Ohio, breaking the victim's leg in five places and dislocating his ankle. Saleh pleaded no contest in March 2014 to counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1) and aggravated robbery in violation of Ohio Revised Code. § 2911.01(A)(3).

The state court merged the counts and sentenced Saleh to four years' imprisonment. A month later, the Department of Homeland Security ("DHS") served Saleh, who had been living in the United States as a lawful permanent resident since 2009, with a Notice to Appear, charging him with removability under the Immigration and Nationality Act ("INA"). The department claimed that Saleh's Ohio convictions made him removable because they constituted (1) a crime of violence with a term of imprisonment of at least one year under 8 U.S.C. § 1101(a)(43)(F), and (2) a theft offense with a term of imprisonment of at least one year under 8 U.S.C. § 1101(a)(43)(G). Either would amount to an "aggravated felony" under the INA, making Saleh removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

The case proceeded to a hearing before an IJ in 2015. Saleh, representing himself, told the IJ he feared returning to Jordan because he had tattoos. That same day, the IJ issued an interim order finding that Saleh's robbery conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), making him removable under the INA. The IJ also determined Saleh was not removable based on his aggravated theft conviction. Saleh never challenged, and does not dispute now, the agency's finding that he committed an aggravated felony.

Two days later, the DHS charged Saleh with removability again—this time under 8 U.S.C. § 1227(a)(2)(A)(i), which allows removal of aliens convicted of a crime of moral turpitude. The IJ agreed with the DHS two months later when he issued an interim order finding Saleh removable under that provision.

Saleh then filed an application for asylum and withholding of removal under the INA and withholding of removal and deferral of removal under the CAT. At a December 2015 hearing, the IJ explained the final-hearing procedure and instructed Saleh to prepare any evidence supporting his claims. The IJ also told Saleh that the court would forward him a copy of a Human Rights Report, prepared by the State Department, discussing the conditions in Jordan.

Saleh, proceeding without counsel, received a hearing nearly two years later, in 2017, where he testified that he feared returning to Jordan because his uncles "think[] I'm a disgrace to the family." Saleh testified that his uncles would harm him because he is not religious and he previously smoked marijuana and drank alcohol, in violation of his uncles' religious beliefs. He further acknowledged his role in the assault for which he was convicted, stating that he "did a wrong thing."

The IJ denied Saleh's application. As to Saleh's request for asylum or withholding of removal, the IJ determined that Saleh's robbery conviction constituted a particularly serious crime, making him ineligible for those remedies. And as to Saleh's request for deferral of removal, the IJ ruled that Saleh failed to establish that the government of Jordan approves or willfully tolerates officials engaging in torture, or that Jordan "turn[s] a blind eye to torture." Nor was it "more likely than not that he would be tortured" in Jordan.

Saleh, represented by counsel, appealed to the BIA, arguing that the IJ erred by (1) determining Saleh's crimes were particularly serious, (2) finding Saleh would not be subject to

torture in Jordan, and (3) failing to allow Saleh to thoroughly present his case. Saleh also argued that his criminal convictions were no longer final for immigration purposes because, while his appeal to the BIA was pending, he had filed a motion to withdraw his plea under Ohio law.

The BIA affirmed the IJ's decision in a written opinion. The BIA first found that Saleh was subject to removal "as a result of his conviction for felonious assault and aggravated robbery." It rejected Saleh's argument that his motion to withdraw his guilty plea made his conviction non-final. And the BIA agreed with the IJ that Saleh's aggravated robbery constituted an aggravated felony, making him ineligible for asylum under 8 U.S.C. § 1158(b)(2)(A)(ii) and (b)(2)(B)(i). As for withholding of removal under the INA and the CAT, the BIA concluded that Saleh's conviction for aggravated robbery qualified as a particularly serious crime, foreclosing these options. 8 U.S.C. § 1231(b)(3)(B); 8 C.F.R. § 1208.16(d)(2). It determined that Saleh's crime "necessarily involved the infliction or attempted infliction of serious physical harm on another and resulted in the imposition of a 4-year sentence of imprisonment."

On Saleh's request for deferral of removal under the CAT, the BIA ruled that Saleh did not show that it was "more likely than not that he will be tortured by or at the instigation of or with the consent or acquiescence . . . of a public official or other person acting in an official capacity" in Jordan. According to the BIA, Saleh did not put forward any evidence that "indicates that the Jordanian government tortures individuals who have been convicted of a felony in a foreign country, used drugs, or have tattoos." Saleh also did not establish that Jordanian courts condone torture, and he failed to show that any Islamic groups torture people with the acquiescence of the Jordanian government. In sum, the BIA found Saleh's claim "too speculative and insufficiently corroborated by specific evidence."

Finally, the BIA held that the IJ allowed Saleh to present his case. Saleh had more than three years to gather evidence and had ample time during the hearing to explain his position while the IJ and counsel for the DHS questioned him. At the close of the hearing, the IJ also provided Saleh with an opportunity to make any additional statement or present any evidence. And instead of making his case, Saleh simply asked for permission to remain in the United States. Plus, the BIA concluded, Saleh failed to identify any additional evidence that would have affected the outcome of the proceedings.

Saleh then filed this petition for review, making many of the same arguments that he made to the BIA—namely that the IJ erred in (1) finding Saleh's crime was particularly serious; (2) ruling Saleh would not be tortured in Jordan; and (3) failing to allow Saleh to present his case.

## Jurisdiction

Typically, we review both the agency's findings of fact and legal conclusions. *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012). But, in some cases, the INA's jurisdiction-stripping provisions limit our review. As is relevant here, the act allows us to entertain only "constitutional claims or questions of law" when the petitioner is "removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)," 8 U.S.C. § 1252(a)(2)(C)-(D); *see Shabo v. Sessions*, 892 F.3d 237, 239 (6th Cir. 2018).

Here, the IJ and BIA determined Saleh was removable for having committed such a crime. Saleh's conviction for aggravated robbery under Ohio Revised Code § 2911.01(A)(3) met the "crime of violence" definition under 8 U.S.C. § 1101(a)(43)(F), making it an "aggravated felony" under the INA. 8 U.S.C. § 1101(a)(43). Aliens who commit aggravated felonies, like Saleh, are removable under 8 U.S.C. § 1227(a)(2)(A)(iii). And that is when the scope of our inquiry narrows. Section 1252(a)(2)(C)-(D) permits us to review only constitutional claims or questions of law.

Factual issues are off the table. *Shabo*, 892 F.3d at 239-41. Saleh does not challenge the agency's determination that he committed an aggravated felony. We therefore lack jurisdiction to review factual issues.

## Standard of Review

"The BIA's decisions are final agency determinations for purposes of judicial review and [the courts] are also empowered to review the IJ's opinion to the extent that the BIA adopts that opinion." *Gaye v. Lynch*, 788 F.3d 519, 526 (6th Cir. 2015); *see also Marouf v. Lynch*, 811 F.3d 174, 181 (6th Cir. 2016) ("[T]he conclusions of the IJ that were adopted by the Board . . . are the proper foci of review.").

CAT claims require the adjudicator to consider the possibility of future torture. *Mapouya v. Gonzales*, 487 F.3d 396, 414-15 (6th Cir. 2007). "In reviewing the Board's decision to deny withholding of removal under the CAT, we reverse only where the decision is manifestly contrary to law." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 n.5 (6th Cir. 2015) (citations omitted).

## Discussion

### A. Particularly Serious Crime

First, Saleh challenges the IJ's particularly serious crime determination, a finding that precludes the possibility of withholding of removal under the INA, 8 U.S.C. § 1231(b)(3)(B)(ii), and the CAT. 8 C.F.R. § 1208.16(d)(2); *see also Luambano v. Holder*, 565 F. App'x 410, 412 (6th Cir. 2014). Because "the BIA's construction of a particular statute" implicates a question of law, § 1252(a)(2)(C)'s jurisdictional bar does not apply to this claim. *Arestov v. Holder*, 489 F. App'x 911, 916 (6th Cir. 2012); *see* 8 U.S.C. § 1252(a)(2)(D).

### (i)     Failure to Challenge the BIA's Opinion

The government argues that Saleh has waived any challenge to the BIA's ruling that his crimes were particularly serious. As a matter of semantics, although the government argues Saleh "waived" any right to challenge the BIA's decision, the government more properly argues Saleh "forfeited" his right. "Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhod Hous. Servs.*, 138 S. Ct. 13, 17 n.1 (2017) (cleaned up). In any event, an appellant abandons issues he fails to raise in his initial brief. *United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006).

Here, Saleh takes aim at the IJ's decision, but he does little to address the BIA's opinion, which is the "final agency determination[] for purposes of judicial review." *Gaye*, 788 F.3d at 526. Saleh argues only that the BIA "may not just supply or intuit the missing pieces." But in fact the BIA reviews the IJ's legal rulings de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii). And here the BIA considered and denied Saleh's claim. Yet, Saleh does not argue that the BIA erred.

True, we may also review the IJ's decision "[t]o the extent the BIA adopted the immigration judge's reasoning." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). And, to a certain degree, the BIA's opinion overlapped with the IJ's ruling. After all, both decisions took the victim's injuries into account. But, unlike the IJ, the BIA did not stop there. It also determined that Saleh's offense was particularly serious because, in part, it "necessarily involved the infliction or attempted infliction of serious physical harm on another and resulted in the imposition of a 4-year sentence of imprisonment."

The IJ had addressed the elements of Saleh's crime two years earlier as part of an interim order finding Saleh removable for committing an aggravated felony. But Saleh does not challenge that ruling or the IJ's analysis on that issue. And the IJ did not cite or otherwise rely on its aggravated felony order in finding Saleh's crime particularly serious. The BIA, though, *did*

consider the IJ's aggravated felony order in finding Saleh's crime particularly serious. So, in a sense, the BIA agreed with the IJ; the Board cited the IJ's aggravated felony order in its own ruling that Saleh's crime was particularly serious. The IJ did not. In other words, the BIA did not "adopt[] the immigration judge's reasoning" in finding that the crime was particularly serious. *Khalili*, 557 F.3d at 435. Thus, we review the BIA's opinion as the final agency decision—an opinion Saleh does not challenge. *See Gaye*, 788 F.3d at 526. Nor does he challenge the IJ's aggravated-felony conclusion. He targets solely the IJ's particularly serious crime analysis. Reviewing the BIA's decision, then, would require this court to craft an argument on Saleh's behalf. And because "ours is an adversarial system in which 'it is improper for the courts' to 'flesh out the parties' arguments for them'" we decline to entertain Saleh's claim. *ECIMOS, LLC v. Nortek Global HVAC, LCC*, 736 F. App'x 577, 585 (6th Cir. 2018) (quoting *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017)).

We **deny** his petition to the extent he disputes the particularly serious crime determination.

**(ii)     The Agency's Rulings**

But even if Saleh had properly challenged the BIA's ruling, we would deny his petition because no error occurred.

Both the INA and the CAT regulations disqualify aliens convicted of a particularly serious crime from withholding of removal. 8 U.S.C. § 1231(b)(3)(B); 8 C.F.R. § 1208.16(d)(2). The INA does not define "particularly serious crime." But the Act permits the attorney general to "determin[e] that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B). The attorney general does so through decisions of the BIA on a case-by-case basis. *See Hernandez-Vasquez v. Holder*, 430 F. App'x 448, 451 (6th Cir. 2011); 8 C.F.R. § 1003.1(d)(1).

In determining whether a crime is particularly serious the BIA "examine[s] the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007). Sometimes, it has "focused exclusively on the elements of the offense, i.e., the nature of the crime." *Id*. "[O]nce the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination." *Id*. This includes conviction records and sentencing information, as well as information outside the record of conviction. *Id*.

"[T]he BIA's interpretation of the INA and accompanying regulations" receive substantial deference. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015). Under the principles established by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), courts "defer to an agency's reasonable interpretation of a statute it administers unless 'the intent of Congress is clear.'" *Hamama v. INS*, 78 F.3d 233, 239 (6th Cir 1996). Where Congress vests the agency with discretion to interpret the statute, the court will uphold the BIA's reading unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007) (quoting *Sad v. INS*, 246 F.3d 811, 814 (6th Cir. 2001)). The same is true of the BIA's application of the statute to a particular case. It, too, must not be arbitrary, capricious, or manifestly contrary to the statute. *See Hamama* 78 F.3d at 240.

Here, the BIA considered the facts underlying the convictions and the victim's injuries, as well as the elements of the offense and nature of the crime, and the type of sentence imposed. The Board concluded that Saleh's conviction "necessarily involved the infliction or attempted infliction of serious physical harm on another" and was particularly serious

The BIA properly applied the factors that the agency uses in interpreting the INA's particularly serious crime provision. *See In re N-A-M-*, 24 I. & N. Dec. 336 (BIA 2007). Saleh does not challenge the *In re N-A-M-* factors; instead, he argues that the IJ failed to adequately evaluate each factor. He contends that the IJ considered only the underlying facts of the conviction. But Saleh does not mention the BIA's decision, which takes into account the nature of the crime, the sentence, the victim's injuries, and the underlying facts of the conviction. *In re N-A-M-*, 24 I. & N. Dec. at 342. To the extent he claims that the agency failed to determine he was "a danger to the community," Saleh's argument falls short because "once an alien is found to have committed a particularly serious crime, we no longer engage in a separate determination to address whether the alien is a danger to the community." *In re N-A-M-*, 24 I. & N. Dec. at 342. And, in any event, the agency need not always consider every factor. *See id.* at 342 (noting the BIA sometimes focuses *exclusively* on the elements of the offense). In sum, the BIA's decision was not arbitrary, capricious, or manifestly contrary to the statute.

## B. Potential Torture in Jordan

Next, Saleh argues the IJ erred in denying deferral of removal under the CAT. Although conviction of a particularly serious crime prevents withholding of removal, such a conviction does not affect *deferral* of removal under the CAT if the petitioner will "more likely than not" face torture by or with the consent or acquiescence of the government. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a).

### (i)     Jurisdiction

We review only a "final order of removal," which includes a denial of deferral under the CAT. *Ventura-Reyes v. Lynch*, 797 F.3d 348, 357-58 (6th Cir. 2015). And, as discussed above, § 1252(a)(2)(C)-(D) precludes review of factual issues because Saleh was convicted of an

aggravated felony. *Shabo*, 892 F.3d at 239. Review, then, is limited to only constitutional issues and questions of law. *Id*.

"[W]hether the BIA correctly considered, interpreted, and weighed the evidence presented" is a factual question. *Id*. (quoting *Arestov v. Holder*, 489 F. App'x 911, 916 (6th Cir. 2012)). So too are "issue[s] of whether [petitioner] has shown a probability of future torture." *Id*. at 241. Thus, a holding from the BIA that a petitioner failed to "establish a prima facie case of his likely torture" presents a "factual determination that we lack jurisdiction to review." *Id*. at 240.

So settles Saleh's petition. He argues that the IJ erred regarding the possibility of torture in Jordan. But this issue is factual and lies outside the scope of our review. *See id*. at 240-41. We **dismiss** this part of Saleh's petition for lack of jurisdiction.

### (ii) Saleh Abandoned His Argument

But even construing Saleh's arguments as legal or constitutional in nature, his petition fails. Saleh argues that the IJ did not take into account all the evidence—including a report from the State Department—in finding Saleh failed to establish he faced torture in Jordan. As Saleh put it, the IJ "considered nothing." Although Saleh does not argue that this amounts to constitutional or legal error, it could implicate constitutional concerns, *see Xuefang He v. Holder*, 502 F. App'x 430, 433 (6th Cir. 2012) ("A claim that an IJ failed to develop the record is one of procedural due process."), or legal issues. *See Shabo*, 892 F.3d at 239-40 ("when 'important facts have been totally overlooked and others have been seriously mischaracterized,'" this court can review the error (quoting *Ventura-Reyes*, 797 F.3d at 360 (emphasis omitted)).

Either way, Saleh failed to properly challenge the agency's decision—just as he did in the particularly serious crime context. He does not address, much less challenge, the BIA's decision. He focuses solely on the IJ's ruling, even though the BIA issued an opinion discussing in detail

why Saleh's deferral argument failed. The BIA's decision does not reference the IJ's opinion, let alone agree with or adopt the IJ's analysis on this issue. Thus, the BIA's opinion is the final agency determination for judicial-review purposes. *Gaye*, 788 F.3d at 526. He has abandoned this claim.

## C. Inability to Present His Case

The problems plaguing Saleh's petition resurface again in his final claim—that the IJ did not give him an opportunity to present his case. Saleh made this argument to the BIA, and the BIA rejected it. But in keeping with the theme of his case, Saleh does not challenge the BIA's ruling.

Even so, Saleh's argument fails on the merits. As the BIA pointed out, Saleh had three years to gather evidence. The IJ and government attorney questioned him at length about his case. And at the close of the hearing, the IJ gave Saleh an opportunity to present any evidence or make any statement he wished. Saleh had an opportunity to present his case. No error occurred.

### Conclusion

Accordingly, we **dismiss in part** and **deny in part** Saleh's petition for review.